**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 733 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated July 14, |
| | : | 2016 in the Court of Common Pleas, |
| | : | Monroe County, Criminal Division at |
| v. | : | No. CP-45-CR-0001137-2009. |
| | : | |
| | : | SUBMITTED:  June 19, 2019 |
| MICHAEL JOHN PARRISH, | : | |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE TODD**                                    **DECIDED:  January 22, 2020**

In this capital case, Appellant Michael John Parrish appeals the order of the Monroe County Court of Common Pleas denying his petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541 *et seq.*  Following our request for supplemental briefing, and after careful review, we hold that Appellant's Statement of Matters Complained of on Appeal filed pursuant to Pa.R.A.P. 1925(b) ("Rule 1925(b) statement") is so vague as to render all of his claims waived for purposes of this appeal. Additionally, we hold that appellate counsel's filing of a woefully deficient statement, one which precludes merits review of all appellate issues, constitutes ineffective assistance of counsel *per se*, warranting reinstatement of Appellant's right to file a Rule 1925(b) statement *nunc pro tunc.*  Accordingly, we remand to the PCRA court for further proceedings consistent with this opinion.

# I.  Factual Background.

This appeal arises from the July 6, 2009 double murder of Appellant's girlfriend, Victoria Adams, and their 19-month-old son, Sidney Parrish.[1]  Appellant, Victoria, and Sidney lived in a Monroe County apartment, and, on the day of the murders, Appellant remained at the apartment with Sidney while Victoria spent the day with family and friends.  As the day proceeded into evening, Appellant became worried that Victoria would not return home in time to give Sidney certain medications he required,[2] a task Appellant did not know how to perform.  Appellant was additionally concerned that Victoria might be pursuing a romantic relationship with someone else.  That night, Appellant made a series of increasingly frequent and agitated calls to Victoria's mobile phone, which she initially answered, but later ignored.  Later in the evening, Victoria and her companions went to a bar, where Victoria disclosed to them that Appellant was abusive and that she wished to end their relationship.  Victoria asked three of her companions — her brother, Keith Adams, her cousin, James Ahern, and a friend, Christopher Ramos — to accompany her to the apartment, so that she could retrieve Sidney and her personal belongings, and end the relationship.

The three men agreed, and the group drove to the apartment.  Victoria went inside while her brother Keith, Ahern, and Ramos waited in the car.  Initially, Appellant emerged from the apartment brandishing a handgun and threatening Ahern with it, but, after Ahern lied that he, too, was armed, Appellant retreated inside.  Shortly thereafter, gun flashes and gunshots emanated from the apartment.  The three men attempted to enter the apartment to assist Victoria, but, as they approached the apartment, Appellant retrieved

---

[1] The factual history of this case was set forth in greater detail in our prior opinion issued in Appellant's direct appeal.  *See Commonwealth v. Parrish*, 77 A.3d 557 (Pa. 2013).

[2] Sidney had recently undergone a heart transplant, and he required anti-rejection medications, which Victoria administered to him at approximately 8 p.m. each night.

a shotgun and began firing at them, prompting them to flee and contact emergency services. Ultimately, Appellant vacated the apartment, and, approximately 30 to 40 minutes later, the men returned to the apartment, performed a cursory search, and found nothing amiss.

Nearly an hour later, Pennsylvania State Police arrived and entered the apartment, and, during a search of the premises, discovered Victoria's and Sidney's bodies in a back bedroom. Each had been shot multiple times. Appellant became the object of a multi-state manhunt, and he left Pennsylvania. He was later arrested in New Hampshire, where he was subjected to a search that yielded a .357 Glock semi-automatic handgun, which forensic tests revealed to have been consistent with the firearm that fired the 13 spent cartridge casings recovered from the crime scene. While being questioned by police, Appellant waived his *Miranda*[3] rights and confessed to killing Victoria and Sidney, indicating that the events of the evening provoked him into such a rage that he fired a warning shot at the ceiling to get Victoria's attention. However, he recalled that he was so angry that he then "lost it" and shot Victoria while she was holding Sidney, inadvertently striking him, which caused Appellant to become even more furious such that he began to "spray" bullets at Victoria and Sidney, firing alternating series of shots at both until he ran out of ammunition. *Parrish*, 77 A.3d at 560.

Appellant was charged with two counts of first-degree murder,[4] and, initially, was represented by two attorneys with the Monroe County Public Defender's Office ("PDO") – William Sayer, Esq., and James Gregor, Esq. On August 18, 2009, the Commonwealth filed notice of its intent to seek the death penalty, alleging, with respect to each count of first-degree murder, the aggravating circumstances that (1) Appellant committed another

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[4] 18 Pa.C.S. § 2502(a).

offense subject to the death penalty or life imprisonment, and (2) Appellant committed another murder.[5]  On April 21, 2010, Appellant, via Attorneys Sayer and Gregor, attempted to tender a guilty plea to both counts, but, at an ensuing colloquy, Attorney Sayer elicited Appellant's statement that he blacked out during the shooting, which the trial court viewed as undermining the notion that Appellant could have formed the requisite intent to commit first-degree murder, and so the trial court rejected the guilty plea.  Two days later, Attorney Sayer withdrew his appearance and was replaced by another attorney — the chief public defender of that office, Wieslaw Niemoczynski, Esq.  On July 19, 2010, Appellant tendered a guilty plea to both counts, which the trial court accepted, but, on September 26, 2011, Appellant asserted his innocence, and, on that basis, was permitted to withdraw his guilty pleas.

On March 19, 2012, Appellant proceeded to jury selection, and, on March 26, 2012, the guilt phase of his trial began, at which the Commonwealth elicited evidence of the foregoing sequence of events culminating in the murders.  Appellant, for his part, did not dispute he committed the killings, but presented a defense based on the theory that his anxiety over Sidney's need for his medication, Victoria's possible infidelity, and a violent provocation by Victoria's companions caused him to become so upset and enraged that he could not form the requisite intent to commit first-degree murder.  Appellant was convicted of both counts of first-degree murder.

---

[5] *See* 42 Pa.C.S. § 9711(d)(10), (d)(11).  In this regard, the murder of Victoria served as an aggravating factor for the murder of Sidney, and vice-versa.  The Commonwealth also alleged, with respect to Appellant's murder of Sidney, the aggravating circumstance that Appellant had killed a victim less than 12 years of age.  *See id.* § 9711(d)(16).  However, as explained in the context of Appellant's direct appeal, the record reflects that the jury did not find this aggravator, possibly due to a clerical error.  *See Parrish*, 77 A.3d at 560 n.3.  Thus, it is not relevant herein.

On April 2, 2012, the penalty phase of Appellant's trial began. With respect to both counts of first-degree murder, the jury found: (1) both of the aforementioned aggravating circumstances; and (2) the mitigating circumstances that Appellant had no significant history of prior convictions; that Appellant committed the murders under the influence of extreme emotional disturbance and distress; and the "catchall" mitigator with respect to Appellant's character and the circumstances of his offense.[6] The jury further found, again with respect to both counts of first-degree murder, that the aggravating circumstances outweighed the mitigating circumstances, and it recommended imposition of the death penalty. On May 15, 2012, Appellant proceeded to a sentencing hearing, at which the trial court imposed a sentence of death. Afterwards, Appellant was imprisoned in the State Correctional Institution in Greene County ("SCI-Greene"), where he remains.

Appellant did not file a notice of appeal, but the Clerk of Courts of Monroe County notified this Court of his sentence of death due to our independent, automatic review of cases involving the imposition of such sentences.[7] The trial court, ostensibly of the view that such notice required Appellant to actually litigate an appeal to obtain such review, directed him to file a Rule 1925(b) statement. Appellant did so, through trial counsel, raising claims asserting improper prosecutorial comment and ineffective assistance of counsel. Appellant then filed a brief with this Court presenting these claims.

On September 25, 2013, in a unanimous opinion, we found Appellant's failure to file a notice of appeal waived any claims unassociated with our automatic capital review of the sufficiency of the evidence supporting the verdict and the sentence of death. *See Parrish*, 77 A.3d at 560-61. After conducting that mandatory review, we found that Appellant's convictions were supported by sufficient evidence, and that the sentences of death were supported by sufficient evidence proving at least one aggravating factor. We

---

[6] *See* 42 Pa.C.S. § 9711(e)(1), (2), & (8).
[7] *See* Pa.R.A.P. 1941.

also concluded that the death sentences were not the product of passion, prejudice, or any other arbitrary factor, and, accordingly, we affirmed them. *See id.* at 561-62. Appellant petitioned for a writ of *certiorari* from the United States Supreme Court, which was denied on May 19, 2014. *See Parrish v. Pennsylvania*, 572 U.S. 1123 (2014) (order).

On August 29, 2014, Appellant filed a *pro se* petition seeking relief under the PCRA. President Judge Margherita Patti-Worthington ("PCRA court") appointed Attorney Brian Ganglione to represent Appellant to assist him in the preparation of an amended PCRA petition; however, Attorney Ganglione was granted leave to withdraw shortly thereafter because of a conflict due to his representation of James Ahern, one of the aforementioned witnesses to the murder. Consequently, the PCRA court appointed Attorney Robert Saurman to represent Appellant, and it directed Attorney Saurman to file an amended PCRA petition on or before January 12, 2015.

Subsequently, Attorney Saurman requested a continuance to prepare the petition. He also requested the allocation of funds from the PCRA court for the appointment of a mental health expert to evaluate the defendant and for a mitigation expert to review the performance of the mitigation expert used by trial counsel, Dr. Deborah Belknap, as well as additional funds for him to travel to SCI-Greene and meet with Appellant. The PCRA court denied the request for funds for the mental health expert, and travel expenses, but allocated $750.00 for the services of a mitigation expert, which Attorney Saurman used to retain Dr. Juliet Yackel. The PCRA court did indicate, however, that Attorney Saurman could again seek leave of court to obtain additional funding for the retention of experts once he had prepared an amended petition identifying the issues to be considered, and after he created a schedule of when the experts would be needed during subsequent proceedings.

Attorney Saurman filed a five-page amended PCRA petition on February 15, 2015, raising a number of claims that Appellant's trial counsel was ineffective for: failing to file pretrial motions to "test the legality of the evidence to be introduced against him at trial," and to obtain all available discoverable material; failing to file a motion *in limine* to exclude allegedly inflammatory autopsy photos; failing to properly qualify jurors for the penalty phase of the trial; and failing to retain a mental health expert to diagnose Appellant's mental health and alleged disabilities and determine how they may have contributed to his behavior and reactions on the night of the homicide. Amended PCRA Petition, 2/17/15, at 2-3. Additionally, Attorney Saurman also asserted that trial counsel was ineffective for failing to prepare his mitigation expert, Dr. Belknap, for trial, and to have her question jurors about the death penalty and their fitness to serve during the selection process. *Id.* at 3. These claims were presented in the petition as general allegations without citation to caselaw, constitutional provisions, or other legal authority, and were devoid of supporting factual development. Further, Attorney Saurman made no request for additional funding for the retention of experts, nor did he file the required schedule with the PCRA court indicating if and when expert testimony would be necessary. The PCRA court scheduled an evidentiary hearing on the amended PCRA petition for July 27, 2015.

Before that hearing, on April 20, 2015, Appellant filed a counseled, 358-page petition for a writ of *habeas corpus* with the Federal District Court for the Middle District of Pennsylvania, which remained pending on the date set for the PCRA evidentiary hearing.[8] On that date, Attorney Saurman filed a motion for a continuance, averring that he had been unable to meet with Appellant because the PCRA court failed to provide him

---

[8] In this proceeding, Appellant was represented by the Assistant Federal Public Defender, Kelly D. Miller, and private counsel, Jennifer Merrigan, Esquire.

with funding to travel to SCI-Greene for that purpose. For his part, Appellant related to the PCRA court that he was dissatisfied with Attorney Saurman's representation for the reason that they had been unable to communicate because Attorney Saurman did not visit him in prison as he had promised, nor did Attorney Saurman respond to Appellant's letters to him regarding the case. N.T. PCRA Hearing, 7/27/15, at 7-8.

Along with the motion to continue, Attorney Saurman simultaneously filed another amended PCRA petition, which, like the first, was five pages long. It raised an additional claim that trial counsel had a conflict of interest and should not have represented Appellant because he was a member of the same public defender's office, which was also representing two witnesses to the crime — James Ahern and Christopher Ramos. Attorney Saurman did not, however, present any developed legal argument as to how this fact, if true, entitled him to relief under the PCRA. In this second amended PCRA petition, Attorney Saurman also attempted to incorporate, by reference, Appellant's *habeas corpus* petition that he had attached *in toto* to the petition. The PCRA court denied the motion for a continuance, and also dismissed, in open court, the portion of the second amended PCRA petition which attempted to incorporate the attached *habeas corpus* petition by reference. The court ruled that such attempted incorporation was not appropriate. *Id.* at 177-78.

The PCRA court proceeded to a hearing at which Appellant's trial counsel, Attorneys Niemoczynski and Gregor, testified, as did Appellant's trial mitigation specialist Dr. Belknap. The hearing was continued until November 3, 2015, so that Dr. Yackel could testify as to her evaluation of Dr. Belknap's performance.

Thereafter, Attorney Saurman filed a third amended PCRA petition on September 21, 2015 in which he presented additional issues raised in Appellant's *habeas corpus*

petition attacking the effectiveness of trial counsel's representation.[9]  Specifically, Attorney Saurman alleged that trial counsel was ineffective for, *inter alia*:  failing to present evidence that Victoria, her brother Keith, Ahern, and Ramos were allegedly intoxicated and high on methamphetamines on the night of the murders and that Ramos had a criminal history of committing offenses which showed a propensity for violence, thereby supporting Appellant's defense theory that they were the instigators of the fatal confrontation; failing to introduce mental health treatment records of Ahern in which he purportedly blamed himself for causing the fatal shooting; failing to obtain, and introduce, for impeachment purposes, the fact that Commonwealth witness Ramos had an open case with the Monroe County District Attorney's Office at the time he testified, and had an expectation of leniency in that case for his cooperation; failing to introduce testimony from a mental health expert that Appellant suffered from obsessive compulsive disorder and general neuropsychological impairment to a degree that he would have suffered extreme anxiety over the events of the evening prior to Victoria's shooting, such that he would not have been able to form the specific intent to kill; failing to introduce forensic evidence which would have demonstrated that multiple weapons other than the one possessed by Appellant were fired in the house at the time of the killings, as well as other medical evidence showing that Victoria died from the first shot and would not have experienced the suffering the Commonwealth claimed that she did by being shot 7 additional times; failing to object to jury instructions which allegedly relieved the Commonwealth of proving the specific intent to kill by allowing a finding of such intent to

---

[9] Although he did not, as he did previously, attach the *habeas* petition and attempt to incorporate it wholesale by reference, it appears that Attorney Saurman lifted the text nearly verbatim from the *habeas* petition filed in federal court, which was authored by Appellant's counsel in that proceeding, and put it into the body of the third amended petition; however, there was no additional factual development of these claims, either in the petition or through supporting affidavits or exhibits.

be presumed; failing to file a motion *in limine* to exclude evidence of: a prior incident of domestic violence against the victim perpetrated by Appellant, Appellant's adherence to the tenets of Nazism, his interest in Nordic religions, his ownership of firearms and ammunition not used in the murders, and his flight to New Hampshire; failing to file a pretrial motion for a change of venue based on extensive pretrial publicity which tainted the jury pool; failing to object to the Commonwealth's introduction of victim impact testimony at the guilt-phase portion of Appellant's trial; and failing to file a direct appeal on Appellant's behalf.

At the November 3, 2015 evidentiary hearing, Dr. Yackel testified as to her evaluation of Dr. Belknap's performance, which she considered to have been deficient; however, she indicated that she could not opine as to whether those deficiencies were prejudicial to Appellant, inasmuch as she had not conducted any independent investigation of her own into any other potential mitigating circumstances, or any other aspect of the case. N.T. PCRA Hearing, 11/03/15, at 57. It appears Attorney Saurman never requested Dr. Yackel perform such an investigation, never requested additional funds from the PCRA court to do so, and never hired other experts or investigators after he made his initial application.

Attorney Saurman also called as a witness Frederick Cutaio, an attorney in the Monroe County PDO who was representing Ahern at the time of Appellant's trial. Cutaio testified that he was aware of the dual representation by the PDO, and, also, that he possessed relevant information about Ahern which could have been used in the preparation of Appellant's defense, namely, that, at the time of Appellant's trial, Ahern had been convicted of simple assault, reckless endangerment, criminal mischief, and harassment and was awaiting sentencing. *Id.* at 120-27. Nevertheless, according to Cutaio, he continued with the dual representation after discussing it with the chief public

defender Niemoczynski, and they had reached the conclusion that no conflict existed because Appellant was not involved with Ahern's case, and Cutaio was concerned only about his case. *Id.* at 127. Attorney Saurman presented no other witnesses at this hearing.[10]

After the Commonwealth filed its answer to Appellant's amended PCRA petitions, and both parties filed briefs, the PCRA court issued a 45-page opinion and order on July 14, 2016 denying Appellant relief on all claims. On August 5, 2016, Appellant, through Attorney Saurman, appealed to this Court,[11] and the PCRA court directed him to file a Rule 1925(b) statement. Attorney Saurman responded by filing a statement which, in its entirety, consisted of the following three claims of error:

> 1. The [PCRA] court erred and abused its discretion by not finding that trial counsel [were] ineffective in their representation of the Appellant to the extent that he is legally entitled to a new trial.
>
> 2. The [PCRA] court erred and abused its discretion by not finding that the case for mitigation of the Appellant was compiled and presented in a legally ineffective manner, entirely outside of the standards of the profession, such that [Appellant] is entitled to a new penalty-phase [of his] trial.

---

[10] Attorney Saurman filed a fourth and final amended PCRA Petition on April 5, 2016 in which he noted pending actions in the Court of Judicial Discipline against former Justices Eakin and McCaffrey and averred that, "[w]ere such jurists biased in their Hearing of [Appellant's] appeal, [Appellant] suffered violations of his constitutional rights to due process effective assistance of direct appeal counsel and meaningful appellate review." Amended PCRA Petition, 4/5/16, at ¶ 4. Attorney Saurman conceded there was not, as of that time, any evidence of bias on the part of either jurist with respect to the handling of Appellant's direct appeal, and he did not subsequently provide any such evidence to the PCRA court.

[11] Appellant, through Attorney Saurman, erroneously appealed to the Superior Court, which later entered a *per curiam* order transferring the appeal to this Court. *See* 42 Pa.C.S. § 9546(d) (providing that a final order in a PCRA proceeding in a capital case where the death penalty has been imposed "shall be directly appealable only to the Supreme Court.").

3. The [PCRA] court erred and abused its discretion by not finding that the failure of trial counsel to effectively represent Appellant and represent his interests resulted in complete and total breakdown of his ability to receive meaningful [a]ppellate review of his conviction, trial, and the underlying proceedings of the same.

Concise Statement of Matters Complained of on Appeal, 8/30/16, unpaginated, at 1-2. In response, the PCRA court, seemingly unable to discern which of its rulings on Appellant's myriad ineffectiveness claims raised in his amended petitions he was challenging on appeal, issued a statement pursuant to Rule 1925(a), which incorporated its prior opinion.[12]

In his brief filed with our Court, Attorney Saurman raised the following two issues:

A. Was trial counsel ineffective in their representation of [Appellant] to the extent that he is legally entitled to a new trial?

B. Was the case for mitigation of [Appellant] compiled and presented in a legally ineffective manner such that [Appellant] is entitled to a new penalty phase [of his] trial?

Appellant's Brief at 5.[13]

Determining that the claims presented in Appellant's Rule 1925(b) statement were vague and insufficiently developed for appellate review, we remanded for the appointment of new counsel, and directed supplemental briefing to address the following issues:

---

[12]  Although the PCRA court's opinion was expansive, it did not address all of the ineffective assistance of counsel claims raised in Appellant's four petitions. For example, the court did not address the allegation of trial counsel's ineffectiveness for failure to object to alleged victim impact testimony introduced by the Commonwealth in the guilt phase of Appellant's trial, for failure to impeach Commonwealth witness Ramos for potential bias over the open criminal case on which he was purportedly due to be sentenced at the time of his trial testimony, and for failure to introduce forensic evidence establishing that more than one gun was fired in the house on the night of the murders.
[13]  Given our ultimate disposition, we do not attempt in this appeal to parse out all of the various specific legal issues which could conceivably be embedded in these all-encompassing claims of trial counsel's ineffectiveness, and, accordingly, we do not opine to the merits of any claim relating to trial counsel's alleged ineffectiveness.

(1) Does an appellant's filing of a vague Rule 1925(b) statement that fails to specify any particular claim waive all his claims for purposes of appeal, even if the trial court issues an opinion addressing some of his claims and a Rule 1925(a) opinion incorporating its prior opinion? The parties are directed to address the appropriate scope of *Commonwealth v. Castillo*, 888 A.2d 775 (Pa. 2005).

(2) If so, does appellate counsel's filing of such a statement constitute ineffective assistance of counsel *per se*?

(3) If so, is an appellant, whose appellate counsel has filed such a statement in the context of an appeal from the denial of PCRA relief, entitled to reinstatement of his Pennsylvania constitutional right to appeal the denial of PCRA relief *nunc pro tunc*? The parties are directed to address the appropriate scope of *Commonwealth v. Hill*, 16 A.3d 484 (Pa. 2011), particularly in light of *Commonwealth v. Peterson*, [192 A.3d 1123 (Pa. 2018)]?

*Commonwealth v. Parrish*, 733 CAP (order filed Oct. 17, 2018). We retained jurisdiction.

On remand, the PCRA court appointed Attorney Brandon Reish to represent Appellant, and the parties have now filed the requested supplemental briefs.

## II. Legal Background

Pa.R.A.P. 1925 was first adopted by our Court in 1975, and it has undergone multiple revisions since then, with the most recent version taking effect on June 24, 2019. The current version provides, in relevant part:

**(a) Opinion in support of order.**

(1) *General rule.* Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall within the period set forth in Pa.R.A.P. 1931(a)(1) file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

* * *

**(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.** If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

\* \* \*

(4) *Requirements; waiver.*

(i) The Statement shall set forth only those errors that the appellant intends to assert.

(ii) The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge. The judge shall not require the citation to authorities or the record; however, appellant may choose to include pertinent authorities and record citations in the Statement.

(iii) The judge shall not require any party to file a brief, memorandum of law, or response as part of or in conjunction with the Statement.

(iv) The Statement should not be redundant or provide lengthy explanations as to any error. Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver.

\* \* \*

(vii) Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.

**(c) Remand.**

(1) An appellate court may remand in either a civil or criminal case for a determination as to whether a Statement had been filed and/or served or timely filed and/or served.

(2) Upon application of the appellant and for good cause shown, an appellate court may remand in a civil case for

the filing *nunc pro tunc* of a Statement or for amendment or supplementation of a timely filed and served Statement and for a concurrent supplemental opinion. If an appellant has a statutory or rule-based right to counsel, good cause shown includes a failure by counsel to file a Statement timely or at all.

(3) If an appellant represented by counsel in a criminal case was ordered to file a Statement and failed to do so or filed an untimely Statement, such that the appellate court is convinced that counsel has been *per se* ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing of a Statement *nunc pro tunc*, and the preparation and filing of an opinion by the judge.

Pa.R.A.P. 1925(a)-(c).

As described by our Court, "[t]he . . . purpose of Pa.R.A.P. 1925(a) is to facilitate appellate review of a particular trial court order. Additionally . . . the rule fulfills an important policy consideration by providing to disputing parties, as well as to the public at large, the legal basis for a judicial decision." *Commonwealth v. DeJesus*, 868 A.2d 379, 382 (Pa. 2005).

Rule 1925(b) permits a judge whose order is being appealed from to request that the appellant provide a "statement of errors" complained of on appeal if the trial judge desires the appellant to provide "clarification of the errors complained of on appeal." Pa.R.A.P. 1925(b). Our Court's Appellate Rules Committee has further elaborated that this subsection of the rule is intended to be of the broadest scope, and requires *all* errors which an appellant claims the trial court made in entering the appealed-from order be included in a Rule 1925(b) statement:

> The term "errors" is meant to encourage appellants to use the Statement as an opportunity to winnow the issues, recognizing that they will ultimately need to be refined to a statement that will comply with the requirements of Pa.R.A.P. 2116. Nonetheless, the term "errors" is intended in this context to be expansive, and it encompasses all of the reasons the trial court should not have reached its decision or judgment,

> including, for example, those that may not have been decisions of the judge, such as challenges to jurisdiction.

Pa.R.A.P. 1925(b), comment. The provisions of Rule 1925(b)(4) establish the basic requirements which all statements of errors must meet, and further state that issues not raised in accordance with those requirements "are waived." Pa.R.A.P. 1925(b)(4)(vii).

Rule 1925(c) provides appellate courts with various remedies when faced with counsel's perceived failure to comply with the requirements of Rule 1925(b). In a civil or criminal case, if there is a material dispute of fact as to whether a Rule 1925(b) statement was filed and served in a timely fashion, the appellate court may remand for a factual determination on these questions. Pa.R.A.P. 1925(c)(1). In a civil case, "[u]pon application of the appellant and for good cause shown, an appellate court may remand . . . for the filing *nunc pro tunc* of a Statement or for amendment or supplementation of a timely filed and served Statement and for a concurrent supplemental opinion. If an appellant has a statutory or rule-based right to counsel, good cause shown includes a failure by counsel to file a Statement timely or at all." Pa.R.A.P. 1925(c)(2). In a criminal case, "[i]f an appellant represented by counsel in a criminal case was ordered to file a Statement and failed to do so or filed an untimely Statement, such that the appellate court is convinced that counsel has been *per se* ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing of a Statement *nunc pro tunc*, and the preparation and filing of an opinion by the judge." Pa.R.A.P. 1925(c)(3).

In *Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998), involving a direct appeal from a criminal conviction, our Court held that all appellants must file a Rule 1925(b) statement, if ordered to do so by the trial court, enumerating all issues they wish to have the appellate court consider, or those issues will be deemed waived for appellate review. Our Court emphasized that Rule 1925 was "a crucial component of the appellate process," and,

thus, requiring mandatory compliance with this rule under penalty of waiver was essential to further its primary purpose which is "to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal." *Id.* at 308.

Subsequently, in *Commonwealth v. Butler*, 812 A.2d 631 (Pa. 2002), our Court ruled that the *Lord* decision also applies to proceedings under the PCRA. Therein, we held that "PCRA appellants, in order to preserve their claims for appellate review, must comply whenever the PCRA court orders them to file a Statement of Matters Complained of on Appeal under Rule 1925. Accordingly, any issues not raised in a Rule 1925(b) statement are waived." *Id.* at 633-34. Consequently, we ruled that, because the attorney for the PCRA petitioner therein, who was appealing the PCRA court's denial of his PCRA petition, failed to file a Rule 1925(b) statement after being ordered to do so by the PCRA court, he waived his client's right to appellate review of any claim related to that denial.[14]

Although *Lord* and *Butler* involved waiver of appellate issues due to counsel's complete failure to file a Rule 1925 (b) statement, in *Commonwealth v. Castillo*, 888 A.2d 775 (Pa. 2005), our Court determined that counsel's untimely filing of such a statement also completely waives such claims for purposes of appellate review, even though the trial court authored an opinion addressing the issues presented in the untimely filed statement. We concluded this was necessary in such situations

---

[14] Then-Justice, now-Chief Justice, Saylor filed a concurring opinion in which he noted that "post-conviction petitioners have a rule-based interest in effective post-conviction counsel analogous to the Sixth Amendment right prevailing at trial and on direct appeal," and that, in situations where PCRA counsel's performance was so deficient it denied the petitioner his right of appeal secured by Article V, § 9 of the Pennsylvania Constitution, remand for the appointment of new counsel is "the accepted remedy." *Butler*, 812 A.2d 637-38 (Saylor, J. concurring). However, because of the paucity of the appellant's argument in his brief and his failure to request, or even discuss, such relief, Justice Saylor did not consider it appropriate to fashion such an equitable remedy under those circumstances.

to insure judges in each appealed case [have] the opportunity to opine upon the issues which the appellant intends to raise, and thus provide appellate courts with records amenable to meaningful appellate review. This firm rule avoids the situation that existed prior to *Lord* where trial courts were forced to anticipate which issues the appellant might raise and appellate courts had to determine whether they could conduct a meaningful review despite an appellant's failure to file a Pa.R.A.P. 1925(b) statement or to include certain issues within a filed statement.

*Id.* at 779 (citations and quotation marks omitted).[15]

Thereafter, in *Commonwealth v. Hill*, 16 A.3d 484 (Pa. 2011) – a capital case – our Court again held that the *Lord/Butler* waiver rule applied in an appeal from the PCRA court's denial of a PCRA petition. Because PCRA counsel in that case failed to file a Rule 1925(b) statement as ordered by the PCRA court, all appellate issues were waived, and we did not consider those that were presented in the appellant's brief to our Court.[16] We rejected the Commonwealth's suggested alternative disposition — removal of the appellant's current counsel and remand to the PCRA court for the filing of a new Rule 1925(b) statement.[17] We opined that such a remedy could not be granted under our prior jurisprudence in this area — citing *Butler, Castillo, Commonwealth v. Schofield*, 888 A.2d

---

[15] Then-Justice Saylor dissented, expressing his preference for adoption of a form of discretionary review which would permit a degree of flexibility for trial and appellate courts to consider issues whenever there has been imperfect procedural or substantive compliance with Rule 1925 by appellants, if the issues are purely legal in nature, or they have been presented to the trial court in some fashion previously, such as through post-trial or post-sentence motions, and the lower court has ruled on them. Justice Saylor also noted that some defects also could be cured through remand to the trial court for further proceedings. He viewed either alternative as preferable to a finding of complete waiver under the *Lord/Butler* rule.

[16] The appellant's counsel claimed that he had made the PCRA court aware of the appellate issues he wished to pursue via a series of off-the-record *ex parte* contacts with its chambers and submission of various other documents to that court, which were not made part of the certified record. We rejected the appellant's argument that these actions constituted sufficient compliance with the requirements of Rule 1925(b).

[17] The Commonwealth's disposition was endorsed by the appellant who did not independently offer her own suggested remedy to cure the waiver caused by her counsel's failure to file the Rule 1925(b) statement.

771 (Pa. 2005) (failure to demonstrate that Rule 1925(b) statement was provided to the trial judge within the 14-day time period permitted by the rule resulted in waiver of all issues for purposes of appeal despite trial court opinion addressing those issues), and *Commonwealth v. Wholaver*, 903 A.2d 1178 (Pa. 2006) (applying *Lord/Butler* waiver rule in a direct capital appeal to find all appellate issues waived other than the statutorily-mandated sufficiency-of-the-evidence review because counsel failed to timely file a Rule 1925(b) statement). *See Hill*, 16 A.3d at 494. Our Court additionally noted that, in *Wholaver*, we rejected a "similar request . . . to overlook a Rule 1925(b) failure." *Id.*

We further observed that the Commonwealth's suggested disposition was based on the version of Pa.R.A.P. 1925 which went into effect in 2007 (and remains in effect today), which added this type of remand procedure in subsection (c)(3); however, this amended version of the rule was not in effect at the time the appellant's appeal was filed; thus, we deemed it to be inapplicable. *Id.* We also declined in *Hill* to consider whether remand for the filing of a new Rule 1925(b) statement, and appointment of new counsel, would have been required had Rule 1925(c)(3) been in effect, but we noted that, in prior cases, our Court had characterized the PCRA as being technically civil in nature, that Rule 1925(c)(3) was a codification of prior caselaw arising out of direct criminal appeals in which counsel failed to file a Rule 1925(b) statement, and that it merely streamlined the procedure for restoration of appellate rights in those circumstances. *Id.* at 495 n.14.[18]

---

[18] Then-Justice Saylor penned a dissent, joined by this author, in which he favored returning the matter to the PCRA court to factually determine if there had been substantial compliance with its order to file a Rule 1925(b) statement. Justice Saylor observed that, since our decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), our Court now strongly discourages the presentation of claims of ineffective assistance of counsel during direct appeal; thus, he reasoned that the sole round of post-conviction review of such claims available under the PCRA "should not be impaired by rules of literal compliance." *Hill*, 16 A.3d at 498 (Saylor, J., dissenting).

Finally, our decision in *Commonwealth v. Peterson*, 192 A.3d 1123 (Pa. 2018), while not involving the *Lord/Butler* waiver rule, nevertheless has relevance to the current matter since it concerns the fundamental question at the heart of this appeal — whether the actions of PCRA counsel can amount to ineffectiveness *per se*, depriving the PCRA petitioner of the right to appellate review of the merits of his collateral claims, such that judicial restoration of that right is required. In that case, the appellant's first PCRA counsel filed the PCRA petition a day late, and, although the PCRA court addressed the claims therein and denied relief, the Superior Court *sua sponte* dismissed petitioner's appeal because the PCRA petition was untimely.[19]

The appellant, through new counsel, then filed a second PCRA petition seeking to restore, *nunc pro tunc*, his right to appeal the PCRA court's denial of his petition. The PCRA court determined that the appellant did not know that his first counsel had missed the filing deadline, and could not have determined that fact through the exercise of due diligence; thus, it regarded the second petition as timely filed under Section 9545(b)(1)(ii) of the PCRA. *See* 42 Pa.C.S. § 9545(b)(1)(ii) (allowing filing of a PCRA petition beyond the one-year deadline if "the facts upon which the claim is predicated were unknown . . . and could not have been ascertained by the exercise of due diligence"). This was in accord with our decision in *Commonwealth v. Bennett*, 930 A.2d 1264 (Pa. 2007) (holding that PCRA counsel's failure to file an appellate brief which resulted in the dismissal of petitioner's appeal constituted abandonment for purposes of that appeal, an act which was *per se* prejudicial, and because appellant was unaware of such abandonment, nor could he have learned of that fact through the exercise of due diligence, a second PCRA petition seeking to restore his appellate rights was timely under Section 9545(b)(1)(ii)).

---

[19] Until that dismissal, neither the parties nor the PCRA court were apparently aware of the petition's untimeliness.

After the PCRA court again denied relief to the appellant on the merits of his PCRA claims, he appealed to the Superior Court. That tribunal once more determined that the petition was untimely, reasoning that, because PCRA counsel had actually filed a petition on the appellant's behalf, counsel did not abandon him as in *Bennett*. Our Court granted allowance of appeal and reversed.

We observed that, while complete abandonment of a client during the appellate process, as occurred in *Bennett*, is ineffectiveness *per se* on the part of appellate counsel, *see Peterson*, 192 A.3d at 1131 (quoting *Commonwealth v. Rosado*, 150 A.3d 425, 427 (Pa. 2016) (in turn citing *Commonwealth v. Lantzy*, 736 A.2d 564 (Pa. 1999) (failing to perfect a direct appeal resulting in its dismissal); *Commonwealth v. Liebel*, 825 A.2d 630 (Pa. 2003) (failing to file a petition for allowance of appeal requested by defendant causing loss of the right to seek discretionary review with our Court); and *Commonwealth v. Halley*, 870 A.2d 795 (Pa. 2005) (failing to file a Rule 1925(b) statement in a direct appeal causing its dismissal))), complete inaction is not the only circumstance under which appellate counsel can be found to be ineffective *per se*. We highlighted the import of our decision in *Rosado*, wherein we found counsel to be ineffective *per se* for filing an appellate brief which raised only issues that had been waived; we deemed this as the functional equivalent of filing no brief at all because it resulted in the forfeiture of merits review for all claims. Thus, applying the collective principles articulated in these cases, we held in *Peterson* that the appellant's first PCRA counsel was ineffective *per se* for filing the PCRA petition a day late, "as it completely foreclosed [him] from obtaining review of the collateral claims set forth in his first PCRA petition," *Peterson*, 192 A.3d at 1132, and we ordered the case remanded to the Superior Court so that it could conduct appellate review of those claims.

## III. Arguments of the Parties

We turn now to the arguments of the parties with respect to the issues presented in the case at bar. Appellant argues that the core purpose of Rule 1925(b), as repeatedly emphasized by our Court in this area, is the identification of issues for appellate review so that courts do not have to speculate as to the issues being raised. Appellant proffers that, when counsel fails to file such a statement, files the statement late, or files a fundamentally defective statement, this "cuts to the heart of counsel's effectiveness in litigating the appeal," as it is an abdication of his or her responsibility to identify the issues raised on appeal, thereby forcing the court to assume counsel's role in this regard. Appellant's Supplemental Brief at 28. Appellant reasons that, for purposes of applying the *Lord/Butler* rule, there is no analytical distinction between the failure to file a Rule 1925(b) statement, the filing of an untimely statement, or the filing of a vague statement. In each situation, the pivotal inquiry is whether the statement sufficiently identified for the lower court the issues for appeal; if it did not, and the lower court was forced to speculate, then the *Lord/Butler* rule requires a finding of waiver.

Appellant avers that PCRA counsel's Rule 1925(b) statement was so vague that it failed to identify any discernible issues for appeal. Appellant points out that, while counsel's PCRA petitions raised a multiplicity of ineffectiveness claims, and the trial court held hearings on some of them, the Rule 1925(b) statement does not identify which of those claims would be raised on appeal, or what factual and legal errors the PCRA court allegedly made. Appellant describes the statement as "little more than a mélange of formless and indistinct ideas, complaining simply that the lower court erred in some undefined way," resulting in the PCRA court being forced to speculate about what errors or rulings counsel was challenging on appeal. Appellant's Supplemental Brief at 29-30. Thus, in Appellant's view, under the *Lord/Butler* rule, as reaffirmed in *Castillo*, this requires a finding of waiver of all of his appellate issues.

Appellant continues that, because PCRA counsel's act of filing this vague Rule 1925(b) statement waived all of his appellate issues, it constituted ineffective assistance of counsel *per se*, just as our Court in *Halley* determined that counsel's act of failing to file any Rule 1925(b) statement in a direct appeal, which resulted in forfeiture of all of his client's issues for purposes of appellate review, was ineffectiveness *per se*. Appellant characterizes the filing of this vague statement to be "the functional equivalent" of filing no statement at all, because, as in *Halley*, appellate counsel's actions waived all appellate issues. Appellant's Supplemental Brief at 31.

Addressing the question of what the appropriate remedy should be if our Court agrees he has waived all of his appellate claims, Appellant suggests two possible courses of action set forth in Rule 1925(c): First, he offers that we could treat this case as a criminal matter and remand it pursuant to Rule 1925(c)(3) for the filing of a new Rule 1925(b) statement. Alternatively, Appellant proposes that we could treat this as a civil matter, citing our Court's statement in *Hill* characterizing a PCRA proceeding to be civil in nature, *see Hill*, 16 A.3d at 495 n.14, and view his supplemental brief as an application for remand and reinstatement of his appellate rights under Rule 1925(c)(2), which allows remand in a civil matter upon application, and for good cause shown, as discussed above.

As a second potential remedy, Appellant submits that we allow him to file another PCRA petition for the purposes of restoring his appellate rights. Appellant argues that in *Peterson* we seemingly approved of this approach, given that we allowed the restoration of petitioner's appellate rights in that case via the filing of a second PCRA petition.

Appellant also emphasizes that, because trial counsel failed to file a direct appeal, he has not had appellate review of his conviction and death sentence beyond the limited automatic review performed by this Court. Further, citing the paucity of factual and legal development in his PCRA petitions discussed above, Appellant avers that this present

appeal from the denial of his PCRA petitions is the first and only opportunity to adequately develop and present claims of ineffective assistance of trial counsel. He adds that a remand would be appropriate because this Court has directed such relief where the record concerning capital PCRA counsel's ineffectiveness is not sufficiently developed. *See Commonwealth v. Pursell*, 724 A.2d 293, 303 (Pa. 1999).

*Amicus* the Defender Association of Philadelphia has filed a brief taking the position that Pa.R.A.P. 1925(b) should be interpreted in accordance with its plain text, and that nothing in the language of this rule permits an appellate court to find automatic waiver of an appellate issue if it is not raised with sufficient specificity in a statement of matters complained of on appeal. *Amicus* argues that the purpose of the rule, as reflected in its text, is to identify for the *trial judge* who has requested the statement the issues which will be pursued on appeal. *See* Pa.R.A.P. 1925(b)(ii) ("The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge."). Thus, in situations such as the present case where the trial court which requested the statement files an opinion addressing certain issues, it can be presumed that the issue has been adequately presented to the trial court so that it understands the issue well enough to opine on it, and an appellate court finding of waiver is inappropriate.

*Amicus* further suggests that it is only in the limited instance where there is a divergence between the issues as framed in the appellate brief and the trial court opinion – *i.e.*, the brief raises issues not addressed by the trial court opinion – that the appellate court should examine the statement to see if the issues were presented in accordance with Rule 1925(b)(4)(i)-(vi). According to *amicus*, only if the appellate court determines that those requirements have not been met can it find the issue waived. In the view of *amicus,* this allows appellate counsel sufficient latitude to raise issues in a manner

adequate for the trial court to understand them, yet also allows for later refinement of his or her advocacy in the appellate brief by developing in greater depth the issue, or subsidiary issues which the rule presumes are subsumed within the issues presented to the trial court.

*Amicus*, the Pennsylvania Association of Criminal Defense Lawyers ("PACDL"), also filed an amicus brief in which it argues that our Court's holdings in *Lord, Butler*, *Schofield*, and *Castillo* are factually distinguishable and, thus, do not directly control the outcome of this case. PACDL concedes that a finding that the Rule 1925(b) statement is vague "dooms the appeal" as, under the provisions of Rule 1925(b)(4), failure to comport with that subsection's requirements results in waiver. PACDL Brief at 7. Hence, it views our Court's "portrayal" of the Rule 1925(b) statement as "vague" and "fail[ing] to identify any particular issue on appeal" as resulting in Appellant's waiver of all appellate issues.[20] *Id.* PACDL regards appellate counsel's waiver of all issues for purposes of appeal to be ineffective assistance of counsel *per se*, and argues that the proper remedy in such situations is to remand for the reinstatement of all appellate rights *nunc pro tunc*.

As a broader remedy, PACDL additionally proposes that we suspend the application of Rule 1925(b) in criminal appeals, and that we refer the matter to the Appellate Rules Committee for amendment. PACDL criticizes the way in which the rule operates as a practical matter, in that it forces appellate counsel to prematurely identify all possible appellate issues before he or she has had the chance to carefully review the record and evaluate the legal and factual soundness of various arguments which could be raised on appeal. Moreover, according to PACDL, the rule does not promote consistency in the appellate process, but, rather, operates in a manner which places

---

[20] This "portrayal" was from our statement of the questions on which we ordered supplemental briefing. *See Parrish*, 733 CAP (order filed Oct. 17, 2018).

appellate criminal litigants in unequal positions. Those litigants not required to file such a statement have greater time and latitude to identify and fully develop appellate issues in the preparation of their brief, as opposed to those litigants ordered to file such a statement, who must then, early in the appellate process, determine, with specificity, issues they are going to pursue under penalty of waiver for failure to do so.

Moreover, PACDL notes that the requirements of the rule are themselves confusing and often leave advocates and courts at odds about whether issues in a Rule 1925(b) statement have been stated with sufficient specificity to be preserved therein. In PACDL's view, this uncertainty makes compliance an exercise in conjecture and raises significant due process concerns.

The Pennsylvania Bar Association ("PBA") also filed an *amicus* brief which argues that the underlying purpose of Rule 1925, as recognized in *Lord* — to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal so that they can prepare an opinion describing their reasoning — is not implicated in this situation because the trial court authored an opinion addressing the issues to be raised on appeal. PBA acknowledges our Court's holding in *Castillo*, but suggests that it be modified so that automatic waiver is not required in situations such as the present case where the trial court authored an opinion addressing each issue the appellant raises on appeal. Thus, because there is an opinion available for the appellate court's review, in these situations, appellate review is not hindered. To insist upon applying *Castillo's* bright line rule in these types of cases would, in PBA's view, require consistency merely for consistency's sake. PBA contends that, while Rule 1925 is helpful in facilitating appellate review, it is not the *sine qua non* of that review, and the constitutional right to appellate review afforded by Article V, Section 9 should not be impaired by a requirement of rigid

compliance in circumstances such as these, given that appellate review is possible.  PBA

Brief at 8.

In its response, the Commonwealth also argues that a finding of waiver is not

necessary under these circumstances, given that this case differs from *Castillo* in that,

here, it is not the timeliness of the statement's filing which is at issue; rather, it is the form

of the statement.  Consequently, from the Commonwealth's perspective, while the bright

line rule of *Castillo* ensures consistency because it is straightforward in its application –

*i.e.*, appellate issues are waived if a statement is untimely, a determination which can be

made by a simple temporal calculation – by contrast, a determination of whether a

statement is so vague as to require a finding of waiver is not subject to such easy

resolution because it involves an exercise of trial court discretion.  As a result, consistency

in finding waiver in these situations is not assured.  While the Commonwealth concedes

that, here, the parties have assumed that the statement is vague, it cautions that in other

cases such a determination may not be quite so clear.

The Commonwealth endorses modifying the scope of our *Castillo* decision in

accordance with the manner suggested by PBA – namely, allowing consideration of

issues raised in an appellate brief if the trial court has addressed the issues in a written

opinion, or even orally on the record.  The Commonwealth suggests that such a rule

would more readily assure consistency, given that it would require a lesser exercise of

discretion, as an appellate court could simply compare an appellant's brief with the trial

court opinion and determine if the issues raised therein had been addressed by the trial

court.

In the case at bar, the Commonwealth acknowledges that the Rule 1925(b)

statement was "entirely vague;" however, it points out that the PCRA judge ordered the

parties to file briefs prior to rendering her initial opinion denying the PCRA claims, and

Appellant's counsel filed a brief with her in which he raised issues he now presents on appeal. Commonwealth Supplemental Brief at 7. The PCRA judge in her initial opinion provided an explanation of her rulings on those issues, and, in the Commonwealth's view, this enabled effective appellate review of those issues.

The Commonwealth agrees that, if the filing of a vague Rule 1925(b) statement waives all of Appellant's issues on direct appeal, then, consistent with our decision in *Halley*, this constitutes ineffective assistance of counsel *per se*. The Commonwealth also interprets our Court's *Peterson* decision, and our Court's earlier decision in *Rosado* relied upon by *Peterson*, as a definitive recognition that such ineffective assistance of counsel which completely forecloses appellate review is a constructive denial of counsel. Thus, a conclusion that Appellant's issues were waived would entitle him to a remand to file a new Rule 1925(b) statement and for the PCRA court to write a new opinion addressing any issues raised therein.

## IV. Analysis

The issues involved in this appeal present pure questions of law; hence, our review is plenary. *Commonwealth v. Hess,* 810 A.2d 1249, 1252 (Pa. 2002). We begin by addressing the threshold question of whether the Rule 1925(b) statement filed by PCRA counsel was so vague that appellate review of any issues related to the PCRA court's dismissal of Appellant's amended petitions was waived. Notably, the parties do not dispute this question, as even the Commonwealth has conceded that the Rule 1925(b) statement was "entirely vague." Commonwealth Supplemental Brief at 7.

Our own independent review of the vacuous statement filed by PCRA counsel leads us to conclude that it is so wholly lacking in comportment with Rule 1925(b)'s basic requirements that a finding of waiver is clearly warranted. As discussed above, under *Lord* and *Butler*, a litigant appealing from the denial of PCRA relief is required to strictly

comply with the provisions of Rule 1925(b), or his or her appellate issues are deemed to be waived. Rule 1925(b)(4)(ii) directs that "[t]he Statement shall concisely identify each error that the appellant intends to assert *with sufficient detail to identify the issue to be raised for the judge*." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). As the comment to Rule 1925(b) further elaborates:

> The more carefully the appellant frames the Statement, the more likely it will be that the judge will be able to articulate the rationale underlying the decision and provide a basis for counsel to determine the advisability of raising that issue on appeal. Thus, counsel should begin the winnowing process when preparing the Statement and *should articulate specific errors with which the appellant takes issue and why*.

Pa.R.A.P. 1925(b), comment (emphasis added).

The statement filed by PCRA counsel, quoted *supra*, did not identify any specific legal error committed by the PCRA court in its rulings on the multifarious claims of trial counsel ineffectiveness presented in the amended PCRA petitions, nor did it even identify *which* of those rulings were being challenged on appeal. Rather, it generically and capaciously encompassed every conceivable claim of ineffective assistance of trial counsel contained in the amended PCRA petitions. As such, it forced the PCRA court to guess which of its rulings were being challenged. Accordingly, waiver of all appellate issues is mandated by Pa.R.A.P. 1925(b)(4)(vii), which provides that "[i]ssues . . . not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

This conclusion is not altered by the fact that the PCRA court authored an opinion addressing a large number of the ineffectiveness claims raised in Appellant's four amended PCRA petitions. As we held in *Castillo*, the mere fact that a court has authored an opinion addressing potential appellate issues does not excuse an appellant from complying with Pa.R.A.P. 1925(b). As Appellant has cogently argued, the burden is on

appellate counsel to comply with Rule 1925(b), and it is not the trial court's responsibility to assume that burden and identify potential appellate issues and frame them for a litigant in an opinion without receiving any guidance from appellate counsel. Pa.R.A.P. 1925(b)(4)(ii) establishes the minimum guidance appellate counsel must provide to the trial court about the specific issues he or she will be pursuing on appeal, and, consequently, plays a vital role in facilitating the appellate process.

In this regard, as noted previously, *see supra* note 12, in the face of Appellant's vague Rule 1925(b) statement, the PCRA court did not write a new opinion, but, rather, merely incorporated the prior opinion which it authored in support of its order denying PCRA relief. As we observed, this opinion did not address all of the claims raised in Appellant's amended petitions, but merely a subset. We express no view on whether the ineffectiveness claims omitted from the PCRA court's discussion have potential merit; however, we highlight these omissions as an additional reason for considering a trial court's Rule 1925(a) opinion to be an inadequate substitute for appellate counsel's filing of a compliant Rule 1925(b) statement. In preparing a Rule 1925(b) statement, appellate counsel has the responsibility to exercise professional judgment to identify and frame *all* potentially meritorious issues for appellate review on behalf of his client. The trial court, in preparing its Rule 1925(a) opinion, has no such duty, and is obligated only to address the issues raised by counsel for an appellant.

Moreover, as our Court also recognized in *Castillo*, strict compliance with Rule 1925(b) promotes uniformity in the appellate review process, and ensures that each litigant ordered to file such a statement receives the same opportunity for appellate review. In our view, it is untenable, and, indeed, potentially offensive to equal protection principles, for the breadth of appellate review to be based on a trial court's discretionary decision to speculatively determine which appellate issues are raised in a vague Rule

1925(b) statement. Such an approach would result in a situation where some litigants obtain appellate review if, as here, the trial court elects to address certain appellate issues, whereas other litigants would be denied that opportunity if the trial court declines to do so. Accordingly, to avoid such unpredictable and inequitable outcomes, where, as here, appellate counsel has wholly failed in a Rule 1925(b) statement to identify with sufficient detail the issues to be raised on appeal, consistent with our prior decisions in *Lord, Butler*, and *Castillo*, those issues are waived.

We turn now to the question of whether PCRA counsel's filing of this type of deficient Rule 1925(b) statement constitutes ineffective assistance of counsel *per se*. As our Court has recognized, while there is no right under the Sixth Amendment to the effective assistance of counsel in a PCRA proceeding, because a PCRA petitioner has the right to counsel under our rules of criminal procedure, there exists "an enforceable right to effective post-conviction counsel." *Commonwealth v. Albrecht*, 720 A.2d 693, 700 (Pa. 1998) (quoting *Commonwealth v. Albert*, 561 A.2d 736, 738 (Pa. 1989)); *see also Peterson*, 192 A.3d at 1130 n.3. This right includes the right to the effective assistance of post-conviction counsel in pursuing an appeal of the denial of post-conviction relief. *Albert*, 561 A.2d at 738.

As our Court observed in *Rosado*, in the direct appeal context, "[t]here is no meaningful difference between an attorney who fails to file a notice of appeal, Rule 1925(b) statement, brief, or petition for allowance of appeal — thereby forfeiting his client's right to appeal — and one who makes all necessary filings, but does so relative solely to claims he has not preserved for appeal, producing the same end. In both situations, counsel has forfeited all meaningful appellate review"; in both situations, counsel is therefore ineffective *per se. Rosado*, 150 A.3d at 434. Moreover, in *Peterson*, we held that these principles are equally applicable in PCRA proceedings, and thus we

found counsel in that matter to be ineffective *per se* for depriving a PCRA petitioner of his right to collateral review by filing an untimely PCRA petition. *Rosado* and *Peterson* therefore stand for the proposition that, whenever PCRA counsel takes *any* action that wholly deprives his or her client of the right to appellate review of collateral claims, counsel will be deemed to be ineffective *per se.* Consequently, in the present case, PCRA counsel's filing of a vague Rule 1925(b) statement, which has completely forfeited Appellant's right to appellate review of all of his collateral claims, constitutes ineffective assistance of counsel *per se.*

Necessarily, then, we must determine the appropriate remedy in this situation. Our Court has indicated that, whenever post-conviction counsel's performance is so deficient that it has entirely denied the post-conviction petitioner the right to appeal, remand to the lower court is the appropriate remedial action so that new counsel can take the necessary steps to restore that right. *Albrecht*, 720 A.2d at 700-01; *see also Albert*, *supra* (because appellate brief filed in appeal from the denial of PCRA relief was so deficient as to render meaningful appellate review impossible, remand for the appointment of new appellate counsel to prepare a new appeal was required in order to effectuate petitioner's post-conviction right to appellate review secured by Article V, Section 9).

Here, Appellant has already received the appointment of new counsel; accordingly, all that remains is to remand this matter for the preparation of a new Rule 1925(b) statement *nunc pro tunc.* Thereafter, the PCRA court must then file a new Rule 1925(a) opinion in response.[21]

---

[21] Although we acknowledge, and appreciate, the well-considered and compelling advocacy of *amici* regarding modification of our *Castillo* decision, and, alternatively, their suggestions for restructuring the provisions of Rule 1925 itself, we decline, under the facts of this case, to make wholesale changes to the rule, or disturb our extant caselaw interpreting it, given that neither the Rule nor our caselaw precludes the remedy we have afforded Appellant.

This matter is hereby remanded to the PCRA court so that Appellant may file a new Rule 1925(b) statement *nunc pro tunc*. Jurisdiction is relinquished.

Chief Justice Saylor and Justices Baer, Donohue, Dougherty, Wecht and Mundy join the opinion.