77 A.3d 557

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Michael John PARRISH, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 18, 2013.

Decided Sept. 25, 2013.

James P. Gregor, Esq., Stroudsburg, for Michael John Parrish.

Elmer D. Christine Jr., Esq., Monroe County District Attorney's Office, Michael Mancuso, Esq., Stroudsburg, Amy Zapp, Esq., PA Office of Attorney General, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice TODD.

In this direct capital appeal, Appellant Michael John Parrish appeals the two death sentences imposed upon him on May 15, 2012, following a jury trial in Monroe County. For the reasons that follow, we affirm his judgment of sentence.

The evidence of record establishes the following facts, which were largely undisputed at trial. Appellant and his girlfriend, Victoria Adams, lived together with their 19-month-old son, Sidney Parrish, in an upstairs apartment located at Route 115 and Gilbert Road in Cresco, Pennsylvania. N.T. Trial, 3/27/12, at 40. Sidney was born with a heart defect and received a heart transplant in September 2008, when he was 9 months old. N.T. Trial, 3/26/12, at 7. As a transplant recipient, Sidney was required to take anti-rejection medications, which Victoria administered to him at around 8:00 p.m. each night, before he went to bed. N.T. Trial, 3/28/12, at 99. Notably, Appellant had never given Sidney the medication and, thus, was not

familiar with how the medication was to be administered or how much Sidney was to receive. N.T. Trial, 3/27/12, at 90.

On the morning of July 6, 2009, Victoria left Sidney with Appellant while she spent the day with her family at the home of her cousin, James Ahern. N.T. Trial, 3/28/12, at 98. As several hours passed and Victoria did not return, Appellant grew concerned that she would not be home in time to give Sidney his medication. Accordingly, Appellant began calling Victoria numerous times to inquire into her whereabouts and when she would return. *Id.* at 99. Victoria, who had been drinking, initially answered Appellant's phone calls, but began ignoring them as the evening progressed. N.T. Trial, 3/27/12, at 77.

That night, after Appellant continued to call her, Victoria confided in her family and friends that Appellant was controlling and abusive, and that she wanted to leave him. *Id.* at 90. Fearful of how Appellant would react to her decision, she asked Ahern, her brother, Keith Adams, and her friend, Christopher Ramos, to accompany her to the apartment so that she could pick up Sidney and bring him with her to Ahern's house, where she planned to stay. *Id.* at 76. The men agreed and drove Victoria to her home at around 10:00 p.m. that night. *Id.* at 84.

Upon their arrival, Victoria exited the car and went inside the apartment. *Id.* at 93. Shortly thereafter, Appellant came outside, approached the men, and pointed a gun at Ahern. *Id.* Although Ahern was not armed, he told Appellant that he had a gun, and Appellant ran back up the stairs and inside the apartment. *Id.* Moments later, the men heard gunfire and saw multiple flashes through the apartment window. *Id.*

Concerned by what they had observed, the men approached the building and attempted to run up the steps leading to the back of Appellant's apartment. Appellant began firing shots at them through the apartment's back door, however, and the men ran back to the car and drove to a friend's house to call 911. *Id.* They returned to the apartment approximately 30 to 40 minutes later, kicked open the door, and went inside. *Id.*

at 96. After looking around briefly, the men saw nothing unusual and drove home. *Id.* at 95–96.

Pennsylvania State Troopers responded to the 911 call about an hour later, at around midnight.[1] N.T. Trial, 3/26/12, at 56. Upon their arrival at the apartment, the troopers smelled fresh gunpowder and observed a bullet hole in the back door. *Id.* at 58. The troopers then walked through the apartment and proceeded into a back bedroom, where they found Victoria and Sidney, lying dead on the floor with multiple gunshot wounds throughout their bodies. *Id.* at 59.

An autopsy performed on the bodies later revealed that Victoria had sustained two gunshot wounds in her chin and jaw; one in her neck; one in the top backside of her right arm; three in her back; and a gunshot wound in her thigh that pierced through the leg and reentered in her left calf. N.T. Trial, 3/27/12, at 19. The bullets destroyed Victoria's cervical spine, tore her vocal cords, fractured her jaw and teeth, and bruised her esophagus. *Id.* at 23–27. One of the bullets was recovered from inside Victoria's heart. *Id.* at 36. The autopsy report also revealed that Sidney sustained one gunshot wound in his left chin, one in his upper neck, two in his chest, one in his left thigh, and one in his left elbow. Two bullets were recovered from Sidney's brain, and he suffered multiple skull fractures. *Id.* at 45. Dr. Samuel L. Land, the forensic pathologist who performed the autopsy on Sidney, opined at trial that both Victoria and Sidney were alive throughout the repeated gunfire. *Id.* at 24.

Following the discovery of the bodies, a multi-state manhunt for Appellant ensued. N.T. Trial, 3/28/12, at 83. The next night, Appellant and his friend, Conrad Jankowski, who picked up Appellant after the shooting, were found and apprehended by local police in Somersworth, New Hampshire. *Id.* at 58–61. During the arrest, officers recovered from Appellant's person a black, .357 Glock semi-automatic handgun, which forensic experts later determined matched the thirteen .357 cartridge

---

1. The troopers took an hour to respond to the 911 call because, initially, they were unable to ascertain the exact location of the reported gunshots. N.T. Trial, 3/26/12, at 56.

casings recovered from the crime scene. *Id.* at 62; N.T. Trial, 3/27/12, at 226.

Pennsylvania State Police arrived in New Hampshire the following evening to interview Appellant, at which time Appellant waived his Miranda rights and confessed to the murders. N.T. Trial, 3/28/12, at 95–96, 107–11. According to Appellant's account of the facts, Victoria had agreed to return home by 6:00 p.m. in the evening on July 6 in order to give Sidney his medication. *Id.* at 98. When Victoria failed to return home in time, however, Appellant claimed that he grew increasingly worried and upset, and that he began to fear Victoria was cheating on him. *Id.* at 99. According to Appellant, when Victoria finally returned home that night, she was disheveled, laughed at him, and refused to answer his questions about where she was going with Sidney or where she had been. *Id.* at 100, 105. Appellant explained that Victoria's actions infuriated him, causing him to fire a warning shot at the ceiling to get her attention. *Id.* at 106. After he fired the initial shot, Appellant maintained that he "lost it," and shot Victoria in the chest, causing both Victoria and Sidney, whom she had been holding, to fall to the ground. *Id.* at 107. Appellant then described that he began to "spray" bullets at Victoria and Sidney, and, thereafter, approached the bodies and alternated between firing two shots each at Victoria and Sidney, until all his rounds of ammunition were expelled. *Id.* at 108–09.

Appellant was charged with two counts of first-degree murder, and he pleaded guilty to both charges. However, Appellant later withdrew his guilty plea, and the case proceeded to trial.[2] During trial, Appellant's counsel advanced the theory that Appellant "lost it" and lacked the specific intent to kill. N.T. Trial, 3/26/12, at 49. The jury nevertheless found that Appellant intended to kill Victoria and Sidney, and convicted

2. Appellant initially attempted to enter a guilty plea in April 2010; however, during his plea colloquy, Appellant's counsel indicated that Appellant may have blacked out during the shooting, calling into question whether Appellant intended to kill Victoria and Sidney. The judge, therefore, refused to accept his plea. Appellant was later permitted to enter a guilty plea in July 2010, but withdrew the plea in September 2011, after he claimed that he believed he was innocent.

Appellant of both counts of first-degree murder on March 30, 2012.

On April 2, 2012, following the penalty phase of Appellant's trial, the jury found two aggravating factors[3] as to the murder of both Victoria and Sidney, and three mitigating factors.[4] After finding the aggravating circumstances outweighed the mitigating circumstances, the jury recommended imposing two sentences of death, and the trial court formally sentenced Appellant to two death sentences on May 15, 2012.

Appellant did not file post-sentence motions or a notice of appeal; however, the trial court later ordered him to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), apparently under the belief that Appellant must do so in accordance with our automatic review of death sentences under Pa.R.A.P. 1941(a). On July 25, 2012, Appellant filed his Rule 1925(b) concise statement, raising various claims of prosecutorial misconduct and ineffective assistance of counsel. Nevertheless, because Appellant did not file an appeal, his claims unassociated with our automatic

3. The jury found the existence of the following aggravating circumstances with regard to both murders, reciprocally: Appellant was convicted of another offense that qualified for imposition of a sentence of life imprisonment or death, 42 Pa.C.S.A. § 9711(d)(10); and Appellant was convicted of another murder at the time of the offense at issue, 42 Pa.C.S.A. § 9711(d)(11); *see generally Commonwealth v. Chamberlain*, 612 Pa. 107, 182, 30 A.3d 381, 426 (2011) (noting that multiple murders may serve as aggravating circumstances for each other). Notably, the Commonwealth also submitted a third aggravating circumstance to the jury: the victim, Sidney Parrish, was under the age of 12 at the time of the killing, 42 Pa.C.S.A. § 9711(d)(16). While there was no question at trial that Sidney was well under the age of 12 at the time of his death, based on the record before us, the jury did not find this aggravator. We note, however, that the trial court suggested this discrepancy may be the result of a photocopying error because the sentencing verdict slip for the death of Sidney Parrish is nearly identical to the sentencing verdict slip for the death of Victoria Adams. *See* Trial Court Opinion, 10/11 /12, at 4 n.3.

4. With regard to mitigating circumstances, the parties stipulated that Appellant had no significant history of prior criminal convictions, 42 Pa.C.S.A. § 9711(e)(1). Additionally, the jury found that Appellant was under the influence of an extreme mental or emotional disturbance, 42 Pa.C.S.A. § 9711(e)(2), and found the "catchall" mitigator concerning Appellant's character and record, 42 Pa.C.S.A. § 9711(e)(8).

review of capital cases have not been preserved, and our review is thus limited to our independent evaluation of the sufficiency of the evidence and a statutory review of his death sentence. *See Commonwealth v. Hairston*, 603 Pa. 660, 668, 985 A.2d 804, 808 (2009); *Commonwealth v. Dick*, 602 Pa. 180, 184–85, 978 A.2d 956, 958–59 (2009).

## I. Sufficiency of the Evidence

■ It is this Court's well established practice in all direct appeals from the imposition of a sentence of death to review the sufficiency of the evidence presented to convict the appellant of first-degree murder. *Commonwealth v. Briggs*, 608 Pa. 430, 454–55, 12 A.3d 291, 306 (2011). Accordingly, we must determine whether the evidence presented at trial and all reasonable inferences deduced therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, supports the jury's finding of first-degree murder beyond a reasonable doubt. *Commonwealth v. Smith*, 604 Pa. 126, 141, 985 A.2d 886, 894–95 (2009).

■ To sustain a conviction for first-degree murder, the Commonwealth must establish beyond a reasonable doubt that: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill. 18 Pa.C.S.A. § 2502(a); *Commonwealth v. Laird*, 605 Pa. 137, 149, 988 A.2d 618, 624–25 (2010). The Crimes Code defines an intentional killing as a "willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). It is well settled that the Commonwealth may prove malice and specific intent to kill by means of wholly circumstantial evidence, including the use of a deadly weapon on a vital part of the victim's body. *Briggs*, 608 Pa. at 455–56, 12 A.3d at 307.

Based upon our thorough review of the record, we conclude the evidence was fully sufficient to sustain both of Appellant's first-degree murder convictions. As discussed in detail above, Appellant confessed to killing both Victoria and Sidney, and, on the night of the incident, Appellant was witnessed at the crime scene with a gun; multiple individuals heard gunshots

coming from Appellant's apartment; Appellant fired his gun at Adams, Ahern, and Ramos; and a .357 Glock semi-automatic handgun was recovered during Appellant's arrest that matched the thirteen .357 shell casings found at the crime scene.

Moreover, although Appellant's counsel attempted to prove at trial that Appellant blacked out during the shooting and, therefore, lacked the specific intent to kill, the facts of record, when viewed in the light most favorable to the Commonwealth as verdict winner, do not readily support such a contention. Indeed, Trooper Elwood F. Spencer, Jr., a firearm and toolmark examiner, testified that Appellant fired 12 rounds into Victoria and Sidney, each of which "require[d] a separate and distinct pull of the trigger." N.T. Trial, 3/27/12, at 219. Evidence introduced at trial further proved that Appellant acted with malice and specific intent, as the autopsies revealed that bullets were recovered from vital body parts of both victims, including Victoria's heart and Sidney's brain. Because the jury is permitted to infer malice and specific intent to kill from the use of a deadly weapon on a vital part of the victim's body, the evidence of record fully supports the jury's finding of first-degree murder for both Victoria and Sidney.

## II. Statutory Review of Death Penalty Verdict

This Court is also required, pursuant to the Sentencing Code, to conduct a statutory review of Appellant's death sentence. We must affirm Appellant's sentence unless we determine that:

(i) the sentence of death was the product of passion, prejudice, or any other arbitrary factor; or

(ii) the evidence fails to support the findings of at least one aggravating circumstance specified in subsection (d).

42 Pa.C.S.A. § 9711(h)(3).

After a careful and thorough review of the record, we conclude that the sentence of death imposed by the jury was not the product of passion, prejudice, or any arbitrary factor, but, rather, was supported by the overwhelming evidence against Appellant adduced at trial. We further conclude that

this evidence, discussed more fully above, was sufficient to enable the jury to find beyond a reasonable doubt both aggravating circumstances, namely, that Appellant was convicted of another offense that qualified for the imposition of a sentence of death, and that Appellant was convicted of another murder at the time of the offense at issue. 42 Pa.C.S.A. § 9711(d)(10), (11). We, therefore, affirm the verdict and the sentence of death imposed upon Appellant.[5]

Judgment of sentence affirmed. Jurisdiction relinquished.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER, McCAFFERY and STEVENS join the opinion.

---

5. The Prothonotary of the Supreme Court is directed to transmit a complete record of this case to the Governor of Pennsylvania in accordance with 42 Pa.C.S.A. § 9711(i).