**[J-75-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 791 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | September 22, 2020 in the Court of |
| | : | Common Pleas, Monroe County, |
| v. | : | Criminal Division at No. CP-45-CR- |
| | : | 0001137-2009. |
| | : | |
| MICHAEL JOHN PARRISH, | : | SUBMITTED:  September 14, 2021 |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE DONOHUE**                                        **DECIDED:  April 28, 2022**

In this capital appeal, Appellant Michael John Parrish challenges the order of the

Court of Common Pleas of Monroe County dismissing his petition for relief filed pursuant

to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546 ("PCRA").  On appeal to this

Court, Parrish raises numerous claims of error, including a layered ineffectiveness claim

in connection with the failure of trial counsel to file a notice of appeal after his conviction

and death sentence.[1]  The first layer of this claim is his contention that trial counsel were

---

[1] Based upon our disposition of this issue, we will not address the remaining eighteen
claims at this time.  As set forth below in further detail, in his third amended PCRA petition
and Corrected Rule 1925(b) Statement, Parrish raised numerous collateral claims
including the layered claim addressed here, which seeks the reinstatement of his direct
appeal rights.  As we stated when reviewing claims after a reinstatement of direct appeal
rights in *Commonwealth v. Holmes*, 79 A.3d 562, 571 (Pa. 2013), "once appellee secured

ineffective for not consulting with him regarding his appellate rights before failing to file a notice of appeal, and in so doing, violated a constitutional duty established in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).[2]  In this regard, Parrish asserts that if trial counsel had consulted with him, he would have instructed that a notice of appeal be filed on his behalf.  The second layer of this claim is Parrish's assertion that his initial PCRA counsel's stewardship of the failure to consult claim before the PCRA court was deficient, in that initial PCRA counsel failed to present any evidence or legal argument to substantiate the failure to consult claim.  In his brief filed with this Court, Parrish identifies the evidence and legal theory that his initial PCRA counsel should have presented to the PCRA court. Parrish raised the second layer of this claim for the first time before this Court in this appeal, and we conclude that he was permitted to do so without a finding of waiver based upon our recent decision in *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021). Accordingly, for the reasons set forth herein, we remand for the introduction of evidence

reinstatement of his direct appeal, he had no obligation or right to pursue, and the court had no obligation to indulge, claims of ineffective assistance of counsel and unitary review."  Likewise, should Parrish succeed in securing reinstatement of his direct appeal rights, there would be no basis for the court to address his remaining collateral claims until collateral review.

[2]  As explained later in this opinion, there are two types of ineffective assistance of counsel claims that may result from counsel's failure to file a notice of appeal.  First, it has long been the law that counsel is ineffective per se if he fails to file a notice of appeal that his client requested be filed.  *See, e.g.*, *Rodriquez v. United States*, 395 U.S. 327 (1969). Second, in *Flores-Ortega*, the United States Supreme Court announced that counsel is ineffective for failing to file a notice of appeal when it is established that counsel had a constitutional obligation to consult with his client regarding the client's appellate rights but failed to do so and where the client would have requested that an appeal be filed on his behalf after consultation.  *Flores-Ortega*, 528 U.S. at 470, 484.

and legal argument so that the PCRA court may issue a decision on the merits of Parrish's layered failure to consult claim.

This Court summarized the facts of record regarding the murder of Petitioner's girlfriend, Victoria Adams ("Victoria"), and their nineteen month-old-son, Sidney Parrish ("Sidney"), in *Commonwealth v. Parrish*, 224 A.3d 682 (Pa. 2020).

> [Parrish], Victoria, and Sidney lived in a Monroe County apartment, and, on the day of the murders, [Parrish] remained at the apartment with Sidney while Victoria spent the day with family and friends. As the day proceeded into evening, [Parrish] became worried that Victoria would not return home in time to give Sidney certain medications he required, a task [Parrish] did not know how to perform. [Parrish] was additionally concerned that Victoria might be pursuing a romantic relationship with someone else. That night, [Parrish] made a series of increasingly frequent and agitated calls to Victoria's mobile phone, which she initially answered, but later ignored. Later in the evening, Victoria and her companions went to a bar, where Victoria disclosed to them that [Parrish] was abusive and that she wished to end their relationship. Victoria asked three of her companions — her brother, Keith Adams, her cousin, James Ahern, and a friend, Christopher Ramos — to accompany her to the apartment, so that she could retrieve Sidney and her personal belongings, and end the relationship.
>
> The three men agreed, and the group drove to the apartment. Victoria went inside while her brother Keith, Ahern, and Ramos waited in the car. Initially, [Parrish] emerged from the apartment brandishing a handgun and threatening Ahern with it, but, after Ahern lied that he, too, was armed, [Parrish] retreated inside. Shortly thereafter, gun flashes and gunshots emanated from the apartment. The three men attempted to enter the apartment to assist Victoria, but, as they approached the apartment, [Parrish] retrieved a shotgun and began firing at them, prompting them to flee and contact emergency services. Ultimately, [Parrish] vacated the apartment, and, approximately 30 to 40 minutes later, the men returned to the apartment, performed a cursory search, and found nothing amiss.

Nearly an hour later, Pennsylvania State Police arrived and entered the apartment, and, during a search of the premises, discovered Victoria's and Sidney's bodies in a back bedroom. Each had been shot multiple times. [Parrish] became the object of a multi-state manhunt, and he left Pennsylvania. He was later arrested in New Hampshire, where he was subjected to a search that yielded a .357 Glock semi-automatic handgun, which forensic tests revealed to have been consistent with the firearm that fired the 13 spent cartridge casings recovered from the crime scene. While being questioned by police, [Parrish] waived his *Miranda*[3] rights and confessed to killing Victoria and Sidney, indicating that the events of the evening provoked him into such a rage that he fired a warning shot at the ceiling to get Victoria's attention. However, he recalled that he was so angry that he then "lost it" and shot Victoria while she was holding Sidney, inadvertently striking him, which caused [Parrish] to become even more furious such that he began to "spray" bullets at Victoria and Sidney, firing alternating series of shots at both until he ran out of ammunition.

*Id.* at 684-85 (citing *Commonwealth v. Parrish*, 77 A.3d 557, 560 (Pa. 2013) (automatic review opinion)).

Prosecutors charged Parrish with two counts of first-degree murder, 18 Pa.C.S. § 2502(a). Parrish was represented by two attorneys with the Monroe County Public Defender's Office, the chief public defender of Monroe County Public Defender's Office, attorney Wieslaw Niemoczynski, Esq. for the guilt phase and James Gregor, Esq. for the penalty phase. *Parrish*, 77 A.3d at 686.

On August 18, 2009, the Commonwealth filed notice of intent to seek the death penalty. Although Parrish initially entered a guilty plea, before trial he withdrew his guilty plea and asserted his innocence. Motion to Withdraw Guilty Plea, 9/26/2011, at 1-2;

---

3 *Miranda v. Arizona*, 384 U.S. 436 (1966).

Order, 9/26/2011. The case proceeded to a jury trial. The Commonwealth presented evidence consistent with this Court's summary of events set forth above, including forensic evidence showing that the victims were repeatedly shot at close range in vital organs of their bodies. Trial Court Opinion, 10/10/2012, at 16. Parrish did not dispute that he killed the victims, but at the guilt phase Attorney Niemoczynski presented a defense that Parrish did not act with a specific intent to kill because he "blacked out." *Id.* The jury convicted him on both counts of first-degree murder. Attorney Gregor represented Parrish at the penalty phase. The jury found two aggravating circumstances[4] and multiple mitigating circumstances.[5] The jury determined that the aggravating circumstances outweighed the mitigating circumstances and recommended the imposition of the death penalty.

At the hearing before the trial court for the imposition of sentence, Attorney Niemoczynski first called Parrish, who made a statement regarding his religious beliefs. N.T., 5/12/2012, at 4. Attorney Niemoczynski then told the court that he was presenting a letter written by Parrish having "to do with some procedure." *Id.* at 5. The letter, which

---

[4] The jury found the existence of the following aggravating circumstances with regard to both murders: Parrish was convicted of another offense that qualified for imposition of a sentence of life imprisonment or death, 42 Pa.C.S. § 9711(d)(10); and Parrish was convicted of another murder at the time of the offense at issue, 42 Pa.C.S.. § 9711(d)(11). Sentencing Verdict Slips, 4/3/2012, at 3.

[5] The jury found several mitigating circumstances, including that Parrish had no significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1); that Parrish was under the influence of extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2); and multiple instances of "catchall" mitigators, namely that Parrish suffered from Obsessive Compulsive Disorder, Obsessive Compulsive Personality Disorder, and had a history of suffering from obsessions, that he had a family history of mental illness, that he had a history of suffering from multiple significant traumas through his lifetime, and that he was under enormous stress stemming from the birth of his seriously ill child, 42 Pa.C.S. § 9711(e)(8).

was admitted into the record but not read aloud or discussed, stated that, "in the event that an appeal is filed on my behalf concerning my sentence without my written and verbal consent, I would like it to be known that the appeal should be considered unauthorized and I ask that it be made null and void. I do not give anyone authorization to file any appeals or motions on my behalf." N.T., 5/15/2012, at 12 (admitting defense Exhibit 1, Parrish letter to Judge Worthington, 5/15/2012, at 1). Parrish did not testify with respect to the letter, and counsel did not question him regarding his intention in writing it. Based upon the jury's recommendation, the trial court imposed a sentence of death. Sentencing Order, 5/15/2012, at 1.

Following imposition of sentence, the trial court advised Parrish of his appeal rights, explaining that, "because this is a death sentence, it is subject to automatic review by the Pennsylvania Supreme Court" and that "[p]ursuant to Title 42, Section 9711, [the Pennsylvania Supreme Court] must review the record of the death penalty case and the death sentence." N.T., 5/15/2012, at 10-11. The trial court then advised Parrish that he also had the right to file post-sentence motions within ten days and to appeal the denial of post-sentence motions directly to the Pennsylvania Supreme Court within thirty days from the date of the denial of post-sentence motions. *Id.* The trial court indicated that Parrish's appointed counsel – Attorneys Niemoczynski and Gregor – would remain his counsel for purposes of appeal. *Id.*

Matters involving the imposition of the death penalty have a two-track appeal process. On the first track, a sentence of death is subject to automatic review by this Court. 42 Pa.C.S. § 9711(h)(1); *Commonwealth v. Towles*, 106 A.3d 591, 597 (Pa. 2014). Pursuant to section 9711(h)(1),

**(h) Review of death sentence.--**

> \* \* \*
>
> (3) The Supreme Court shall affirm the sentence of death unless it determines that:
>
>> (i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; or
>>
>> (ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d).

42 Pa.C.S. § 9711(h)(3)(i)-(ii). Pennsylvania Rule of Appellate Procedure 1941(a) sets forth the procedure by which the trial court initiates the Section 9711(h) automatic review process:

> Upon entry of a sentence subject to 42 Pa.C.S. § 9711(h) (review of death sentence) the court shall direct the official court reporter and the clerk to proceed under this chapter as if a notice of appeal had been filed [twenty] days after the date of entry of the sentence of death, and the clerk shall immediately give written notice of the entry of the sentence to the Supreme Court Prothonotary Office[.]

Pa.R.A.P. 1941(a).

As part of the automatic review, this Court evaluates, inter alia, the evidence to determine whether the record is sufficient to support the first-degree murder conviction. *See Towles*, 106 A.3d at 597 ("In all cases in which the death penalty is imposed it is this Court's duty to review the record to ensure the evidence sufficiently supports the first degree murder conviction[.]") (internal citation omitted); *Commonwealth v. Baumhammers*, 960 A.2d 59, 68 (Pa. 2008); *Commonwealth v. Blakeney*, 946 A.2d 645, 651 n.3 (Pa.

2008); *Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003).[6]  According to the note to Pa.R.A.P. 1941, the statutory procedure for automatic review of capital cases has been interpreted to "permit an independent review of the sufficiency of the evidence in such cases."  Pa.R.A.P. 1941, note.

Thus, on the first track, this Court automatically reviews the sufficiency of the evidence to sustain the first-degree murder conviction; the sufficiency of the evidence to support the finding of at least one aggravating circumstance; and it reviews the imposition of the sentence of death, to ensure that it was not the product of passion, prejudice, or any other arbitrary factor.  *See Commonwealth v. Brown*, 987 A.2d 699, 705 (Pa. 2009) ("In all cases in which the death penalty is imposed, it is this Court's duty to review the record to ensure the evidence sufficiently supports the first degree murder conviction and the finding of aggravating circumstances, and that the sentence was not the product of passion, prejudice, or other arbitrary factors.").

---

[6]  The automatic review of the sufficiency of the evidence was originally mandated by statute.  Act of February 15, 1870, P.L. 15, no. 6 § 2 ("In all cases of murder in the first degree, … it shall be the duty of the judges [of the Supreme Court] to review both the law and the evidence, and to determine whether the ingredients necessary to constitute murder in the first degree shall have been proved to exist; and if not so proved, then to reverse the judgment and send the same back for a new trial, or to enter such judgment as the laws of this commonwealth require.").  However, the General Assembly repealed the Act via the Judiciary Act Repealer Act (Act of 1978-53, P.L. 253) and replaced it with a new statutory provision for automatic review.  *See* Act of March 26, 1974, P.L. 213, § 3.  Although the present iteration of automatic statutory review, codified in section 9711(h), does not explicitly require the Court to address the sufficiency of the evidence, 42 Pa.C.S. §9711(h), the Court has continued in the tradition of the Act of February 15, 1870.  Specifically, the "Court performs a self-imposed duty to review the sufficiency of the evidence underlying the first-degree murder conviction in all capital direct appeals, regardless of whether the appellant has raised the issue."  *Commonwealth v. Freeman*, 827 A.2d 385, 402 (Pa. 2003) (citing *Commonwealth v. Zettlemoyer*, 454 A.2d 937, 942 n.3 (Pa. 1982)).

On the second track, counsel may seek to preserve claims other than those specifically identified in Section 9711(h) by filing a timely notice of appeal. Pa.R.A.P. 902. "[F]iling a notice of appeal is, generally speaking, a simple, nonsubstantive act that is within the defendant's prerogative." *Garza v. Idaho*, 139 S. Ct. 738, 746 (2019). This Court has repeatedly held that if capital counsel fails to file a notice of appeal, all claims not included in the Section 9711(h) automatic review are not preserved for appeal and cannot be raised during the automatic review process. *See Commonwealth v. Hairston*, 985 A.2d 804, 808 (Pa. 2009) ("Because Appellant's counsel did not file a timely appeal, claims unassociated with our automatic review of capital cases have not been preserved and are not properly before this Court."); *Commonwealth v. Dick*, 978 A.2d 956, 958-59 (Pa. 2009) (citing *Commonwealth v. Freeman*, 827 A.2d 385, 402 (Pa. 2003) ("[A]s a general rule on capital direct appeals, claims that were not properly raised and preserved in the trial court are waived and unreviewable.")).

In this case, neither of Parrish's two trial counsel filed a notice of appeal. Instead, they filed only a motion to initiate the statutory automatic review process as set forth in Rule 1941, which had not occurred within the twenty days prescribed by that rule. Upon receipt of this motion, the trial court began the automatic review process by issuing orders directing the clerk of courts to proceed pursuant to Rule 1941.

Although trial counsel had not filed a notice of appeal, the trial court nevertheless ordered trial counsel to file a concise statement of the errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure Rule 1925(b). On July 25, 2012, Attorney Gregor filed a concise statement raising three issues. First, he claimed that the Commonwealth's cross-examination of his mitigation expert regarding Parrish's alleged

abuse of his first wife inflamed the passions of the jury. Rule 1925(b) statement, 7/25/2012, at 1. Second, he asserted that the questioning regarding prior abusive relationships allowed the Commonwealth to imply the existence of an aggravating factor not authorized by statute under 42 Pa.C.S. § 9711(d). *Id.* Third, he complained that the mitigation expert's report was erroneously admitted into evidence and published to the jury without complete redaction of all references to Parrish having previously entered a guilty plea to the charges in question. *Id.*

Attorney Gregor subsequently filed an appellate brief in this Court in support of these three issues. Attorney Gregor attempted to present these issues as if they fell under the automatic statutory review, arguing that they demonstrated that the sentence of death was the product of passion, prejudice, or any arbitrary factor. Parrish's Brief, 11/27/2012, at 6 (citing 42 Pa.C.S. § 9711(h)(3)).

This Court rejected Attorney Gregor's attempt and found all three claims to have been waived, stating as follows:

> On July 25, 2012, [Parrish] filed his Rule 1925(b) concise statement, raising various claims of prosecutorial misconduct and ineffective assistance of counsel. Nevertheless, because [Parrish] did not file an appeal, his claims unassociated with our automatic review of capital cases have not been preserved, and our review is thus limited to our independent evaluation of the sufficiency of the evidence and a statutory review of his death sentence.

*Parrish*, 77 A.3d at 561.

This Court completed the automatic review of Parrish's death sentence in accordance with Section 9711(h). In addressing the sufficiency of the evidence, the Court conducted an independent evaluation of the record, finding that Parrish's convictions were supported by the evidence. *Id.* at 561-62. We also concluded that the sentence of death

was not the product of passion, prejudice or any arbitrary factor, and that the evidence was sufficient to enable the jury to find the existence of both aggravating circumstances beyond a reasonable doubt. *Id.* at 562. Parrish petitioned for writ of certiorari to the United States Supreme Court, which was denied. *Parrish v. Pennsylvania*, 572 U.S. 1123 (2014).

On August 29, 2014, Parrish filed a timely pro se PCRA petition. On November 14, 2014, the PCRA court appointed Attorney Robert A. Saurman, Esq. (hereinafter "initial PCRA counsel") as counsel. On February 17, 2015, an amended counseled PCRA petition was filed, in which Parrish asserted numerous allegations of ineffectiveness of trial counsel, none of which involved the failure of trial counsel to file a notice of appeal. Separately, on April 20, 2015, Parrish filed a petition for writ of habeas corpus in federal court and a motion to stay the federal habeas proceedings to allow counsel to exhaust the habeas claims in state court. *Parrish v. Wetzel*, 2015 WL 3441965, at *2 (M.D. Pa. May 28, 2015). The United States District Court for the Middle District of Pennsylvania determined that a stay was not available because Parrish did not show good cause for failing to exhaust his habeas claims first in state court. *Id.* at *3. It dismissed his petition for writ of habeas corpus without prejudice. *Id.* at *4.

The PCRA court scheduled a PCRA evidentiary hearing for July 27, 2015. On the date of this hearing, initial PCRA counsel filed a second amended PCRA petition. The second amended PCRA petition attached and attempted to incorporate by reference the claims in Parrish's petition for writ of habeas corpus filed in federal court, including, for the first time in state court, a claim that both trial counsel were ineffective for failing to file a notice of appeal. Second Amended PCRA Petition, 7/27/2015, at 3. The PCRA court dismissed this attempt to incorporate the federal habeas pleading by reference, and instead instructed initial PCRA counsel to raise the issues from the federal habeas pleading in a third amended PCRA petition. N.T., 7/27/2015, at 184.

At the PCRA evidentiary hearing on July 27, 2015, initial PCRA counsel made only superficial inquiries of both trial counsel regarding their failure to file a notice of appeal. Attorney Niemoczynski indicated that Attorney Gregor "was responsible for the appeal[,]" and that, to his knowledge, there was no determination by the Public Defender's Office not to pursue an appeal. *Id.* at 100-01. Initial PCRA counsel likewise posed only a few questions to Attorney Gregor regarding the direct appeal. *Id.* at 160. Attorney Gregor indicated that an appeal is automatic. *Id.* at 160-61. In response to follow-up questions, Attorney Gregor continued to focus on the procedure of the automatic review and suggested that no separate notice of appeal needed to be filed to preserve claims for appellate review, stating:

> As I recall, there were no post-sentence motions filed. The immediate appeal to the Supreme Court for some reason didn't quite procedurally happen, as I recall, the way it was supposed to happen, and that was – it was a matter of correcting it on the record to make sure it had gone up.
>
> For some reason, I think the case didn't go up directly to the Supreme Court. There was a holdup, I believe, in our clerk of courts office for some momentary reason. And I recall reading the rule again, and I believe I contacted the clerk's office and said, "We need to get this – this has to go up. We can't just sit here until somebody files it."
>
> In other words, as I recall, somebody usually files a notice of appeal, and they wait for that to happen before they will send it up. I believe in death penalty cases, if I recall, it's supposed to go up automatically, and it was laying there and not going up.

*Id.* at 161. Initial PCRA counsel did not ask any further questions regarding trial counsel's failure to file a notice of appeal or present evidence to demonstrate that Parrish had requested that a notice of appeal be filed. He also did not ask either trial counsel any questions regarding whether they had consulted with Parrish about filing a notice of

appeal. The PCRA court then continued the evidentiary hearing until November 3, 2015. *Id*. at 185.

Prior to the resumption of the hearing, on September 21, 2015, initial PCRA counsel filed a third amended PCRA petition on Parrish's behalf, presenting many of the claims set forth in the federal habeas petition. He alleged that trial counsel's performances were deficient for failing to file a notice of appeal, and he contended that numerous meritorious issues that had been preserved for direct appeal were waived when trial counsel failed to file a notice of appeal. Third Amended PCRA Petition, 9/21/2015, ¶ 487. Initial PCRA counsel asserted that Parrish was "constructively denied counsel on appeal," and argued that prejudice should be presumed. *Id*. ¶ 488 (citing *United States v. Cronic*, 466 U.S. 648, 654 (1984)). Alternatively, initial PCRA counsel asserted that prejudice was proven from trial counsel's deficient performances in failing to meaningfully consult with Parrish during the appeal regarding his appellate rights. *Id*. ¶¶ 489-490. He alleged that if trial counsel had consulted with Parrish, Parrish would have instructed that he wished for a notice of appeal to be filed. *Id*. ¶¶ 492-493. Finally, he requested restoration of his appellate rights and permission to file a direct appeal from his conviction nunc pro tunc. *Id*. ¶¶ 493, 497.

At the continued PCRA evidentiary hearing, initial PCRA counsel did not present any evidence to support these claims relating to the failure to file a notice of appeal. Initial PCRA counsel did not recall trial counsel to testify about their communications with Parrish regarding his appellate rights, including whether they consulted with Parrish regarding the advantages and disadvantages of filing a notice of appeal and/or whether they made a reasonable effort to discern Parrish's wishes. Parrish was likewise not asked any questions regarding whether trial counsel consulted with him regarding whether he wanted a notice of appeal to be filed or what his response would have been if he had been so

consulted. In sum, initial PCRA counsel did not present any evidence to support Parrish's claims that trial counsel were ineffective for failing to consult with him regarding the filing of a notice of appeal.

Following the evidentiary hearing, initial PCRA counsel filed a brief in which he asserted (without citation to any evidence of record) the ineffectiveness of trial counsel for failing to file a notice of appeal. In this regard, initial PCRA counsel premised his arguments solely on trial counsel's unjustified failure to file a **requested** direct appeal, though he did not contend (or cite to any evidence of record) that Parrish had in fact requested that a notice of appeal be filed. Parrish's Brief, 2/5/2016, at unnumbered page 12. He further argued, again without any evidentiary support, that trial counsel "did not work with Parrish in preparing an appeal" and "failed to file a full and comprehensive appeal." *Id.* He asserted that it was "readily evident that counsel was ineffective for the manner in which they handled Parrish's appeal[.]" *Id.*

The PCRA court issued an opinion and order denying relief on all claims. PCRA Court Order, 7/14/2016, at 1. With respect to Parrish's assertion that trial counsel were ineffective for failing to file a direct appeal, the PCRA court viewed the claim solely as a failure to file a **requested** appeal claim, consistent with initial PCRA counsel's brief. The court observed that Parrish had the burden of proving that he requested an appeal and that counsel disregarded his request, and found that Parrish did not meet that burden. PCRA Court Opinion, 7/14/2016, at 15-16. The PCRA court observed that the trial court had informed Parrish of his post-sentencing rights, and that, based on the letter Parrish's trial counsel submitted at the sentencing hearing,[7] Parrish was aware of his right to appeal and was able to contact his attorneys. *Id.*

---

[7] As cited above, the letter stated that, "in the event that an appeal is filed on my behalf concerning my sentence without my written and verbal consent, I would like it to be known that the appeal should be considered unauthorized and I ask that it be made null and void.

Initial PCRA counsel filed a notice of appeal with this Court and a Pa.R.A.P. 1925(b) statement raising trial counsel's ineffectiveness in very general terms. In view of the unspecific claims asserted in the Rule 1925(b) statement, we retained jurisdiction and remanded for the appointment of new counsel and directed the filing of supplemental briefing to address the consequences of the filing of the vague Rule 1925(b) statement. *Parrish*, 224 A.3d at 690. On remand, the PCRA court appointed Attorney Robert Patterson, Esq. ("present PCRA counsel"). Following supplemental briefing, this Court concluded that initial PCRA counsel's performance (in filing a vague Rule 1925(b) statement) was so deficient that it "completely forfeited [Parrish's] right to appellate review of all of his collateral claims," and "constitute[d] ineffective assistance of counsel per se." *Parrish*, 224 A.3d at 701-02. We remanded the matter for the preparation of a new Rule 1925(b) statement nunc pro tunc, with instructions to the PCRA court to then file a new Rule 1925(a) opinion in response. *Id.* at 701.

On July 6, 2020, present PCRA counsel filed a Corrected Rule 1925(b) Statement ("Corrected 1925(b) Statement") raising nineteen issues, including ineffectiveness claims relating to the failure to file a notice of appeal.[8] In this regard, present PCRA counsel

---

I do not give anyone authorization to file any appeals or motions on my behalf." N.T., 5/15/2012, at 12 (admitting defense Exhibit 1, Parrish letter to Judge Worthington, 5/15/2012, at 1).

[8] Other claims include:

- violation of his right to conflict-free counsel;
- trial counsel failed to investigate and present evidence at trial;
- the prosecution withheld material exculpatory evidence;
- trial and appellate counsel were ineffective for failing to preserve and raise challenges to defective jury instructions;
- trial and appellate counsel were ineffective for failing to object to irrelevant, highly prejudicial evidence;

asserted, for the first time, the layered claim that initial PCRA counsel was ineffective for failing to present any evidence in support of the failure to consult claim.[9]

_____

- penalty phase counsel was ineffective for failing to investigate, develop and present mitigating evidence;
- trial counsel were ineffective for failing to advise Parrish regarding his right against self-incrimination and failing to object to the admission of his statements obtained in violation of his right against self-incrimination;
- penalty phase counsel was ineffective for failing to object to inaccurate penalty-phase instructions;
- trial counsel were ineffective for failing to seek a change of venue or venire;
- trial counsel were ineffective for failing to object to prosecutorial misconduct; and
- penalty phase counsel was ineffective for failing to object to unconstitutional victim impact evidence.

Parrish's Brief at ii-iv.

[9] The Dissenting Justice writes that the "failure-to-consult PCRA counsel ineffectiveness claim remanded by the Majority is not included in Parrish's Corrected 1925(b) statement." Dissenting Op. at 5. In its view, by framing this issue in terms of trial counsel's failure to file a notice of appeal, Parrish was limiting his claim to one of failure to file a **requested** appeal, and Parrish thus waived his arguments regarding the inadequacy of consultation. This position overlooks that a failure to consult argument, at base, must assert that counsel failed to file an appeal that would have been requested. *See Flores-Ortega*, 528 U.S. at 473 (framing issue as "ineffective assistance of counsel claim, based on counsel's failure to file a notice of appeal without respondent's consent."). Parrish's framing of the issue in paragraph seventeen adequately encompasses the present claim. Each error identified in a Rule 1925(b) statement "will be deemed to include every subsidiary issue that was raised in the trial court[.]" Pa.R.A.P. 1925(b)(4)(v).

Parrish's assertion that trial counsel failed to file an appeal was supplemented by his assertion in paragraph 17 of his 1925(b) statement referencing PCRA counsel's ineffectiveness for failing to develop the evidence and law to support nunc pro tunc reinstatement of appellate rights and his citation to Count XVII of the third amended PCRA Petition, wherein he argued that counsel failed to consult with him regarding an appeal which he would have requested if consulted. Rule 1925(b)(4) allows an appellant to cite to the record to identify where the basis for the challenge may be found. Pa.R.A.P. 1925 (b)(4), Note.

On September 22, 2020, the PCRA court issued an opinion and order denying Parrish any relief. PCRA Court Opinion, 9/22/2020, at 2. The PCRA court observed that it had previously disposed of seven of the issues on the merits, including the failure to file a **requested** direct appeal. *Id.* It further stated that the twelve issues it had not addressed were "without merit." *Id.* The PCRA court did not address Parrish's failure to consult issue, which, as noted above, was raised superficially in the third amended PCRA petition, but initial PCRA counsel did not present evidence to support the claim and did not develop the claim beyond the initial assertions in the third amended PCRA petition.

### Arguments of the Parties

In this appeal from the PCRA court's order, Parrish alleges, inter alia, that initial PCRA counsel was ineffective for failing to present readily-available evidence to prove that trial counsel failed to meaningfully consult with him regarding his right to appeal. Parrish's Brief at 44-48. He points out that initial PCRA counsel raised this claim in the third amended PCRA petition by averring that there was a lack of consultation, but then confused the record and the legal requirements for presenting a failure to consult claim and failed to present any evidence or legal argument to substantiate this claim. *Id.* at 46-47. Parrish insists that on remand, he would demonstrate that trial counsel's post-sentence communications were limited to mailing him documents that had already been filed with the courts, with little or no explanation of their legal significance, the status of proceedings, or his appeal options. *Id.* at 47-48. He further avers that in response to receiving a copy of the Rule 1925(b) statement filed on direct appeal, Parrish wrote to trial counsel requesting further explanation of the appeal process. *Id.* at 48. Parrish asserts that if he had been adequately consulted, he would have expressed his wish to appeal his

---

In consideration of the fact that an assertion that counsel deficiently failed to file an appeal encompasses arguments regarding deficient consultation, and in light of the entirety of paragraph seventeen, Parrish has properly presented this issue for review.

conviction and sentences. *Id*. at 46. Because initial PCRA counsel failed to introduce this letter and other evidence corroborating trial counsel's failure to adequately consult Parrish regarding the appeal process, he seeks a remand for a new evidentiary hearing to present evidence demonstrating that trial counsel failed to adequately and effectively consult with him. *Id*. at 48.

In its brief, the Commonwealth states that Parrish cannot raise new claims aimed at the representation of initial PCRA counsel for the first time on appeal. Commonwealth's Brief at 8. As to Parrish's arguments regarding trial counsel's deficient stewardship on appeal, the Commonwealth asserts that "Parrish does not highlight any available issue that he submits appellate counsel failed to raise on appeal or the potential for relief upon such claim." *Id.* at 23. The Commonwealth takes the position that the failure to identify issues that would have been raised on direct appeal is fatal to Parrish's claim. *Id.*

## Analysis

### 1. Raising an Ineffectiveness Claim on Appeal

Initially, we address the Commonwealth's assertions that Parrish improperly raised the ineffectiveness of initial PCRA counsel for the first time in his Corrected Rule 1925(b) Statement. Commonwealth's Brief at 8. The Commonwealth correctly observes that previously claims of PCRA counsel's ineffectiveness could not be raised for the first time after a notice of appeal has been filed from the underlying PCRA matter. *See, e.g.*, *Commonwealth v. Ford*, 44 A.3d 1190, 1201 (Pa. Super. 2012) (holding that petitioner was not permitted to raise ineffectiveness of initial PCRA counsel for the first time in a 1925(b) statement).[10]

---

[10] Likewise, when the PCRA court addressed the Corrected Rule 1925(b) Statement, we had not established a mechanism to address the ineffective assistance of post-conviction

Recently, this Court rejected that principle in favor of "allowing a PCRA petitioner to raise claims of ineffective PCRA counsel at the first opportunity to do so, even if on appeal." *Commonwealth v. Bradley*, 261 A.3d 381, 405 (Pa. 2021). We recognized that the structure of appeal and collateral review "places great importance on the competency of initial PCRA counsel[,]" and reasoned that "it is essential that a petitioner possess a meaningful method by which to realize his right to effective PCRA counsel." *Id.* at 401. We stated that "this approach best recognizes a petitioner's right to effective PCRA counsel while advancing equally legitimate concerns that criminal matters be efficiently and timely concluded." *Id.* at 405. We further explained:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. [*Commonwealth v.*] *Holmes*, 79 A.3d [562, 577 (Pa. 2013)]. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere 'boilerplate assertions of PCRA counsel's ineffectiveness,' [*Commonwealth v.*] *Hall,* 872 A.2d [1177, 1182 (Pa. 2005)]; however, where there are 'material facts at issue concerning [claims challenging counsel's stewardship] and relief is not plainly unavailable as a matter of law, the remand should be afforded,' [*Commonwealth v.*] *Grant*, 813 A.2d [726, 740 n.2 (Pa. 2002)](Saylor, J., concurring).

counsel, and thus the PCRA court did not address the substance of the new claim. Instead, the PCRA court noted that present PCRA counsel recognized that the specific claims were "not properly before this [c]ourt," but that with the pendency of a case addressing the potential establishment of such a mechanism in this Court, *see generally*, *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021), "he raises same to preserve the issue on appeal." PCRA Court Opinion, 9/22/2020, at 4 n.13 (citing Corrected 1925(b) Statement, ¶ 1 n.1).

*Id.* at 402. We also stated that Rule 302(a), which provides that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal[,]" Pa.R.A.P. 302(a), "does not pertain to these scenarios." *Id.* at 405.

Parrish adequately raised and preserved his layered claim of the ineffective assistance of trial and initial PCRA counsel by raising it at the first opportunity to do so, specifically in his Corrected 1925(b) Statement and in his brief filed with this Court in this appeal. In both his Corrected Rule 1925(b) Statement and his brief, he observed that he has the right to effective PCRA counsel, enforceable on PCRA appeal. Corrected 1925(b) Statement, 7/6/2020, ¶ 1 n.1; Parrish's Brief at 29. He cited the well-established principle that the right to counsel includes the right to effective assistance of counsel, and therefore, the rule-based right to post-conviction counsel includes the right to the effective assistance of post-conviction counsel. Corrected 1925(b) Statement, 7/6/2020, ¶ 1 n.1; (citing *Commonwealth v. Albrecht*, 720 A.2d 693, 700 (Pa. 1998) (finding that Rule 1504 of the Pennsylvania Rules of Criminal Procedure "requires an enforceable right to effective post-conviction counsel")); Parrish's Brief at 29 (same).

Parrish then raised the claim we now address. He asserted that initial "PCRA counsel was ineffective for failing to present all available evidence and law in support of Mr. Parrish's right to reinstatement of his direct appeal rights nunc pro tunc." Corrected 1925(b) Statement, 7/6/2020, ¶ 17. In his brief filed with this Court, present PCRA counsel asserted that initial PCRA counsel "confused the trial record and legal contours of the claim" and mistakenly presented a failure to file a requested appeal claim, when he should have presented a failure to consult claim. Parrish's Brief at 46-47.

In *Bradley,* we expressly stated that the previous requirements were untenable and therefore do not apply and that a PCRA petitioner may raise claims of ineffective PCRA counsel at the first opportunity to do so, "even if on appeal." *Bradley*, 261 A.3d at 405. In so holding, we recognized that traditional issue preservation principles do not apply where they would make it impossible for a petitioner to timely raise a claim of initial PCRA counsel's ineffectiveness. *Id.* at 404-05 (citing *Commonwealth v. Ligons*, 971 A.2d 1125, 1139 (Pa. 2009) (plurality)). For instance, in this case, to hold Parrish to traditional issue preservation principles would mean that he was required to raise initial PCRA counsel's ineffectiveness before the PCRA court even issued its 1925(a) opinion which conclusively found that Parrish was not entitled to relief. Moreover, under traditional issue preservation principles, Parrish would have been required to raise initial PCRA counsel's ineffectiveness while he was still represented by initial PCRA counsel, since Parrish did not obtain present PCRA counsel until a notice of appeal was filed. *Id.* at 405 (citing *Commonwealth v. Shaw*, 247 A.3d 1008, 1015-16 (Pa. 2021) (noting the general rule against counsel challenging their own performance)). In *Bradley*, we stated that "it would be unreasonable to penalize a PCRA petitioner" by imposing such a requirement. *Id.* at 404; *see also Shaw*, 247 A.3d at 1015 (stating that it would be "unreasonable to apply issue preservation requirements to penalize a post-conviction petitioner because his attorney didn't recognize and raise a claim of his own ineffectiveness contemporaneously with the lawyer's own misstep"). For these reasons, we conclude that Parrish raised this claim at the first opportunity to do so, and that, pursuant to *Bradley*, it has not been waived.

2. **Remand on the Failure to Consult Claim**

In contrast to the argument advanced before the PCRA court by initial PCRA counsel, Parrish (through present PCRA counsel) does not claim that he actually requested his trial counsel to file a notice of appeal on his behalf. Instead, he now avers that trial counsel did not consult with him regarding his appellate rights, which the United States Supreme Court held in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) may be constitutionally required in some circumstances. *Id.* at 480. As such, Parrish's ineffectiveness claim[11] is that trial counsel failed to consult with him to advise him with respect to his appellate rights, and that initial PCRA counsel failed to present available evidence to prove that counsel failed to consult with him and that, if he had been consulted, he would have instructed trial counsel to file a notice of appeal.

In *Flores-Ortega,* the High Court first reviewed the law relating to ineffective assistance of counsel for the failure to file a requested appeal:

> We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *See Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *cf. Peguero v. United States,* 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit"). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary

---

[11] It is well-established that to succeed on a claim asserting the of ineffective assistance of counsel, the petitioner must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987). If a petitioner fails to satisfy any of the three prongs of the ineffectiveness inquiry, his claim fails. *Commonwealth v. Brown*, 196 A.3d 130, 150-51 (Pa. 2018). Where a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation. *Commonwealth v. McGill*, 832 A.2d 1014, 1022-23 (Pa. 2003).

notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (accused has ultimate authority to make fundamental decision whether to take an appeal).

*Flores-Ortega*, 528 U.S. at 470. As indicated, a showing that counsel failed to file a requested appeal is ineffectiveness per se, and prejudice is presumed without the need for proof because the circumstances are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The Court in *Flores-Ortega* faced a circumstance in which the defendant had not instructed his counsel to file an appeal, but also, had not instructed his counsel not to file an appeal. The Court thus acknowledged that the case "lies between th[e] poles" of cases in which the defendant instructed counsel (one way or the other) with respect to the filing of an appeal, and thus the appropriate question is whether counsel is "deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?" *Flores-Ortega*, 528 U.S. at 477.

The Court identified the requisite antecedent question, namely, "whether counsel in fact **consulted** with the defendant about an appeal." *Id.* at 478 (emphasis added).

In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-

> advising the defendant about the advantages and
> disadvantages of taking an appeal, and making a reasonable
> effort to discover the defendant's wishes. If counsel has
> consulted with the defendant, the question of deficient
> performance is easily answered: Counsel performs in a
> professionally unreasonable manner only by failing to follow
> the defendant's express instructions with respect to an appeal.
> See supra, at 1034 and this page. If counsel has not consulted
> with the defendant, the court must in turn ask a second, and
> subsidiary, question: whether counsel's failure to consult with
> the defendant itself constitutes deficient performance. That
> question lies at the heart of this case: Under what
> circumstances does counsel have an obligation to consult with
> the defendant about an appeal?

*Id.*

As the Court explained, the term "consult" in this context requires a finding that counsel did or did not "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and ma[de] a reasonable effort to discover the defendant's wishes." *Id.* The Court explained that when counsel consults with the defendant, the question of deficient performance is easily answered. Knowing the defendant's wishes as to whether he wants an appeal to be filed, counsel performs in a professionally unreasonable manner if he fails to follow the defendant's express instructions. *Id.* On the other hand, "[i]f counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* The Court rejected a bright-line rule requiring counsel to always consult with the defendant, holding instead that

> [c]ounsel has a constitutionally imposed duty to consult with
> the defendant about an appeal when there is reason to think
> either (1) that a rational defendant would want to appeal (for
> example, because there are nonfrivolous grounds for appeal),
> or (2) that this particular defendant reasonably demonstrated
> to counsel that he was interested in appealing.

*Id.* at 480. To make this determination, lower courts should consider "all the information counsel knew or should have known." *Id.* One highly relevant factor in this regard is whether the conviction follows a trial or guilty plea, because a guilty plea reduces the scope of potential issues for appeal and suggests that the defendant wanted to end judicial proceedings. *Id.*

If a petitioner establishes that counsel had a constitutional duty to consult regarding the filing of an appeal and failed to do so, the next question is whether the defendant suffered prejudice. Unlike cases involving a failure to file a requested appeal for which prejudice is presumed, a failure to consult with the defendant does not constitute ineffectiveness per se. Instead, where the defendant shows that counsel failed to consult regarding an appeal, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

The Court observed that the lower court had presumed prejudice because Flores-Ortega did not consent to counsel's failure to file a notice of appeal. *Id.* at 487. On the record before it, the Court was unable to determine whether the attorney had a duty to consult, whether she satisfied her obligations and, if she did not, whether Flores-Ortega was prejudiced. Therefore, it vacated the judgment of the Court of Appeals and remanded the case for further proceedings.[12] *Id.*

_____

[12] While we did so by a per curiam order rather than by a formal opinion, on one occasion this Court likewise remanded a case to the lower court for further evidentiary findings related to a *Flores-Ortega* failure to consult claim. Our order provided in relevant part as follows:

To address the merits of Parrish's claim that initial PCRA counsel was ineffective for not advancing his (Parrish's) claim that trial counsel were ineffective for failing to consult with Parrish regarding his appellate rights, we apply the framework set forth in *Flores-Ortega.* To be entitled to a remand, Parrish must provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness. That is, he must establish that there are issues of material facts concerning claims challenging counsel's stewardship and that relief may be available. *Bradley*, 261 A.3d at 402 (citing *Grant*, 813 A.2d at 740 n.2) (Saylor, J., concurring)).

Here, Parrish has established issues of material fact, which, if proven by a preponderance of the evidence, would entitle him to reinstatement of his direct appeal rights. Parrish points to potential evidence that he claims was readily-available to initial PCRA counsel but not presented at the PCRA evidentiary hearing to show that trial counsel let the time for filing the appeal lapse without consulting him on whether he wanted

---

AND NOW, this 16th day of July 2012, the Petition for Allowance of Appeal is GRANTED, the order of the Superior Court is VACATED, and the matter is REMANDED to the Court of Common Pleas of Venango County to determine whether petitioner would have wished to file a direct appeal had counsel consulted him. *See Roe v. Flores–Ortega*, 528 U.S. 470, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (counsel has constitutionally imposed duty to consult with defendant when there is reason to think rational defendant would want to appeal or that particular defendant reasonably demonstrated to counsel he was interested in appealing); *id.,* at 484, 120 S.Ct. 1029 (to show prejudice, petitioner must demonstrate reasonable probability that, but for counsel's deficient failure to consult with him about appeal, he would have timely appealed)[.]

*Commonwealth. v. Vanistendael,* 48 A.3d 1220, 1221 (Pa. 2012).

to appeal his conviction and death sentence. Parrish's Brief at 47-48. According to Parrish, this evidence will show that Attorney Niemoczynski had assigned the appeal to Attorney Gregor, who did not realize he was responsible for filing a notice of appeal (as opposed to relying on the automatic Section 9711(h) appeal). As such, Attorney Gregor believed that he had no reason to consult with Parrish, even though by letter Parrish had specifically requested additional information regarding the appeal process. *Id.* Because initial PCRA counsel did not introduce any evidence of this at the PCRA evidentiary hearings and failed to offer any legal argument in his subsequent brief, a remand is required for further development of the evidentiary record.

Parrish has also presented colorable arguments that trial counsel had a constitutional duty to consult with him regarding his appeal. *See Flores-Ortega*, 528 U.S. at 480. Parrish's conviction came as the result of a trial, not a guilty plea.[13] Moreover, the issues trial counsel attempted to raise on direct appeal support Parrish's contention that a rational defendant in his shoes would have sought to appeal. Parrish's Brief at 46; *see also Flores-Ortega*, 528 U.S. at 480 (providing that a defendant may show that counsel had a duty to consult by showing "that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)"). Furthermore, the severity and finality of the punishment of death itself may be reason to believe that a rational

---

[13] In *Flores-Ortega*, the Court recognized that entering a guilty plea would be "highly relevant" to the determination of whether counsel knew or should have known that the defendant would want to appeal, because a guilty plea reduces the scope of appealable issues. *Flores-Ortega*, 528 U.S. at 480; *see similarly, Pitcher v. Huffman*, 65 F. App'x. 979, 982-83 (6th Cir. 2003) (finding that the contested conviction came as the result of a trial and not a guilty plea was "highly relevant" to determining whether a rational defendant would want to appeal).

defendant would want to appeal. Simply put, Parrish had "nothing to lose" by filing an appeal.

Lastly, to demonstrate prejudice as required by *Flores-Ortega*, Parrish has alleged that "[i]f counsel had consulted with [Parrish] and informed him of these issues, [he] would have told them that he wished to appeal his convictions and death sentences." Parrish's Brief at 46. The Commonwealth's focus on whether Parrish raised any available issue that appellate counsel failed to raise on appeal is misplaced. Commonwealth's Brief at 23. The question with respect to prejudice is not whether Parrish has identified any meritorious issues for appeal, but rather whether there is a reasonable probability that he would have advised trial counsel to file a notice of appeal had he been consulted. *Flores-Ortega*, 528 U.S. at 484. The Supreme Court in *Flores-Ortega* expressly stated that it would be unfair to require a defendant "to demonstrate that his hypothetical appeal might have had merit" and therefore, the defendant must only "demonstrate that, but for counsel's deficient conduct, he would have appealed." *Id.* at 487.

Parrish is entitled to a remand to present evidence and argument to substantiate his claim that he is entitled to reinstatement of his direct appeal rights nunc pro tunc. Upon the PCRA court's grant or denial of this relief, if either Parrish or the Commonwealth appeal that determination, the PCRA court should file a supplemental 1925(a) opinion to address that decision. Parrish's ineffectiveness claims raised in the appeal from the PCRA court's denial of his previously-filed PCRA petitions will then be considered.

Jurisdiction relinquished.

Chief Justice Baer and Justices Todd and Wecht join the opinion.

Justice Dougherty files a dissenting opinion in which Justices Mundy and Brobson join.